511 F.2d 248
 75-1 USTC P 9259
 UNITED STATES of America and James M. Sinda, Revenue Agent,
Internal Revenue Service, Petitioners-Appellees,
v.
Marvin L. TRATNER, Respondent-Appellant.
UNITED STATES of America and James M. Sinda, Revenue Agent,
Internal Revenue Service, Petitioners-Cross-Appellants,
v.
Marvin L. TRATNER, Respondent-Appellee.
 Nos. 74--1166, 74--1167.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 14, 1974.
Decided Feb. 18, 1975.
 
 Ernest J. Brown, Acting Chief, and William A. Whitledge, Atty., Tax Div., Dept. of Justice, Washington, D.C., James R. Thompson, U.S. Atty., and Gary L. Starkman, Asst. U.S. Atty., Chicago, Ill., for United States.
 Wayne B. Giampietro and Elmer Gertz, Chicago, Ill., for Tratner.
 Before FAIRCHILD, Chief Judge, HASTINGS, Senior Circuit Judge, and SWYGERT, Circuit Judge.
 HASTINGS, Senior Circuit Judge.
 
 
 1
 The United States and the taxpayer, Marvin L. Tratner, both appeal from the decision of the district court granting in part and denying in part the government's petition to enforce an Internal Revenue summons brought pursuant to Title 26, U.S.C., Sections 7402(b) and 7602.
 
 
 2
 On February 18, 1971, taxpayer, an attorney, made a $10,000 cash deposit to his checking account numbered 428 619 1 at the Harris Trust and Savings Bank and on February 22, 1971, he wrote a $10,000 check on that account. The account is an escrow account of the kind commonly maintained by attorneys in order to segregate clients' funds from their own. The bank reported the cash transaction to the Internal Revenue Service as required by 31 U.S.C. § 1081. Subsequently, Internal Revenue Agent James Sinda was assigned to audit taxpayer's 1971 tax return as a result of the bank report. Agent Sinda conducted an audit of records provided to him by the taxpayer and was satisfied with all aspects of the audit except the escrow account. Taxpayer showed Sinda the $10,000 check drawn on the escrow account, but he covered the line indicating the name of the payee. Taxpayer refused to provide any further information about the escrow account on the ground that the account was protected by the attorney-client privilege.
 
 
 3
 On July 5, 1973, Agent Sinda issued taxpayer an Internal Revenue summons requiring production of the following items:
 
 
 4
 1. All checking accounts including checking account No. 428 619 1
 
 
 5
 2. Copies of cancelled checks for above checking accounts
 
 
 6
 3. Copies of deposit slips for above checking accounts
 
 4. All savings accounts
 
 7
 5. All information regarding a deposit to checking account No. 428 619 1 in the amount of $10,000 on February 18, 1971 and all information regarding any other deposit made to checking account 428 619 1 during 1971
 
 
 8
 6. All information regarding a check written on checking account number 428 619 1 in the amount of $10,000 on February 22, 1971 and all information regarding any other check written on account 428 619 1 during 1971
 
 
 9
 7. Any other records necessary to determine the correct tax liability for 1971
 
 
 10
 Taxpayer had no savings account and has provided information about his personal checking account. Upon taxpayer's refusal to provide the remaining materials sought by the summons, the United States instituted this proceeding for enforcement of the summons in the district court. The taxpayer, in his response to the government's petition, claimed that the escrow account was protected from disclosure by the attorney-client privilege.
 
 
 11
 The district court, upon the government's motion ordered Tratner to show cause why he should not comply with the summons. On October 31, 1973, an evidentiary hearing was held at which Agent Sinda and Tratner testified. Following the hearing, the taxpayer supplied to the district court for in camera inspection all of the files in his possession pertaining to the $10,000 transaction and the identity of the client involved. There is no indication in the record that the district court examined these materials. The materials were never filed in the district court or introduced into evidence. They are not included in the district court record, nor do they appear in the record on appeal. The district court's order and findings of fact and conclusions of law do not indicate whether the court considered the in camera materials in making its decision.
 
 
 12
 On December 5, 1973, the court issued its decision. It ordered taxpayer to produce the records required in items 1, 2 and 3 of the summons, that is, the checking account, cancelled checks and deposit slips for the escrow account. The court held that disclosure of these items would not violate the attorney-client privilege. The court declined to enforce the summons as to items 5, 6 and 7 which had requested 'all information' regarding all deposits made to and all checks written on the escrow account, including those relating to the $10,000 transaction, as well as any other records necessary to determine the correct tax liability for 1971. The court held that these requests were overbroad.
 
 
 13
 Tratner appeals from the court's order enforcing the summons as to items 1, 2 and 3. The United States cross-appeals from the denial of enforcement of items 5 and 6. No appeal is taken from the denial of enforcement of item 7. The district court stayed its December 5, 1973, order pending appeal to prevent the issue from becoming moot.
 
 THE ATTORNEY-CLIENT PRIVILEGE
 
 14
 The taxpayer's appeal raises only one issue: whether the attorney-client privilege is, under the facts of this case, a defense to an Internal Revenue summons to produce records of an attorney's escrow checking account.
 
 
 15
 The Supreme Court has held that an Internal Revenue summons may be challenged on the ground of attorney-client privilege. Reisman v. Caplin,375 U.S. 440, 449, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964). The burden is on the taxpayer to prove that the information requested falls within the attorney-client privilege. United States v. Johnson, 5 Cir., 465 F.2d 793, 795 (1972); Bouschor v. United States, 8 Cir., 316 F.2d 451, 456 (1963).
 
 
 16
 The circuits are divided on the question of whether the issue of privilege in a federal tax proceeding is to be resolved as a matter of state or federal law. Compare Colton v. United States, 2 Cir., 306 F.2d 633, 636 (1962), cert. denied, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963), and Falsone v. United States, 5 Cir., 205 F.2d 734, 739--742, cert. denied, 346 U.S. 864, 74 S.Ct. 103, 98 L.Ed. 375 (1953) (federal law) with Baird v. Koerner, 9 Cir., 279 F.2d 623, 627--629 (1960) (state law). Other courts, including our own, have found it unnecessary to determine whether state or federal law is to be applied where the result would be the same under either standard. Tillotson v. Boughner, 7 Cir., 350 F.2d 663, 666 (1965); Bouschor v. United States, 8 Cir., 316 F.2d 451, 456 (1963).
 
 
 17
 Here, as in Tillotson, we need not reach that question since 'Illinois, which has no statute with respect to attorney-client privilege, looks to the common law as do the federal authorities.' Tillotson, supra, 350 F.2d at 666.[1]
 
 
 18
 In Radiant Burners, Inc. v. American Gas Association, 7 Cir., 320 F.2d 314, cert. denied, 375 U.S. 929, 84 S.Ct. 330, 11 L.Ed.2d 262 (1963), this court, sitting en banc, reviewed the common law history of the attorney-client privilege and cited with approval Dean Wigmore's summary of the factors essential to existence of the privilege:
 
 
 19
 (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived. 8 J. Wigmore, Evidence § 2292 (McNaughton rev. 1961).
 
 
 20
 The identical test has been adopted in Illinois. In re Estate of Busse, 332 Ill.App. 258, 262, 75 N.E.2d 36, 38 (1947).
 
 
 21
 The question here is whether the taxpayer has borne his burden of proving the existence of these factors. Taxpayer argued in the district court and on appeal that all transactions in an attorney escrow account are per se privileged. All of taxpayer's evidence introduced at the hearing, however, concerned the $10,000 transaction and not the account generally. Taxpayer clearly has failed to sustained his burden with respect to the account as a whole. The question remains whether he has proved that the elements required for the privilege were present in the $10,000 transaction so as to protect from disclosure the identity of the client to whom the $10,000 check was written.
 
 
 22
 Normally, the identity of a client is not considered a privileged communication. United States v. Ponder, 5 Cir., 475 F.2d 37, 39 (1973); Tillotson v. Boughner, 7 Cir., 350 F.2d 663, 666 (1965); Colton v. United States, 2 Cir., 306 F.2d 633, 637 (1962), cert. denied, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963). But, '(t)o the general rule is an exception, firmly bedded as the rule itself. The privilege may be recognized when so much of the actual communication has already been disclosed that identification of the client amounts to disclosure of a confidential communication. (Citing cases.)' NLRB v. Harvey, 4 Cir., 349 F.2d 900, 905 (1965). See also, Tillotson, supra; Colton, supra; Baird v. Koerner, 9 Cir., 279 F.2d 623 (1960); Comment, Assertion of the Attorney-Client Privilege to Protect the Client's Identity, 28 U.Chi.L.Rev. 533 (1961).
 
 
 23
 The identity of the client is only to be privileged if it is a confidential communication which otherwise meets the requirements of the attorney-client privilege. Thus, for example, in Tillotson v. Boughner, 7 Cir., 350 F.2d 663 (1965), this court followed Baird v. Koerner, 9 Cir.,279 F.2d 623 (1960), in holding that an attorney cannot be compelled to divulge the name of a client who employs him to voluntarily mail sums of money to the Internal Revenue Service in payment of undetermined income taxes, unsued upon, and as to which no government audit or investigation is pending. In those cases it was evident that the client had sought legal advice from his attorney and that the substance of confidential communications would be revealed if the client's name were disclosed. Applying the same test here, we must determine whether the taxpayer has shown that the $10,000 transaction satisfies the requirements of the attorney-client privilege enumerated by Wigmore. The obligation is on the person claiming the privilege to present the underlying facts demonstrating the existence of the privilege. It is not enough for an attorney to testify to his conclusions. 'The responsibility of determining whether the privilege exists rests upon the District Judge and not upon the lawyer whose client claims the privilege.' NLRB v. Harvey, 4 Cir.,349 F.2d 900, 907 (1965). Where this evidence may be presented only by revealing the very information sought to be protected by the privilege, an in camera inspection of the evidence may be appropriate. See, for example, United States v. Johnson, 5 Cir., 465 F.2d 793 (1972).
 
 
 24
 The only witness at the hearing to testify on behalf of the taxpayer was Tratner himself. He testified that he was an attorney admitted to practice before the courts of the State of Illinois and the United States District Court for the Northern District of Illinois. At two points in the hearing he responded to questions concerning the $10,000 transaction. First, Tratner responded directly to the court's questions:
 
 
 25
 Mr. Tratner: Your Honor, I have a file which involves this specific $10,000 transaction. The $10,000 which was used in that transaction would indicate the name of the client. Again, I will offer all of this in camera for the Court to determine.
 
 
 26
 The Court: My question to your counsel was whether or not, independent of the check, was there any correspondence in the file or indication in the file which would demonstrate the existence of an attorney-client relationship in the expenditure on behalf of the client?
 
 
 27
 Mr. Tratner: Yes, there is something else. It is a note, because this money was used as a part of a transaction.
 
 
 28
 The Court: By note, you mean a promissory note, a business note?
 
 
 29
 Mr. Tratner: That is correct.
 
 
 30
 The Court: That note indicates the existence of the relationship and the expenditure on behalf of the client as well?
 
 
 31
 Mr. Tratner: No, we would have to go further in the file. It is there.
 
 
 32
 The Court: Let me start initially. Do you have anything further that you wish to put in or offer other than the in camera inspection?
 
 
 33
 Mr. Giampietro: I would, your Honor, have testimony by Mr. Tratner.
 
 
 34
 Later Tratner was questioned by his attorney, Mr. Giampietro:
 
 
 35
 Q. Now just so it is on the record, did you receive $10,000 on February 18, 1971, from a person who you represented as an attorney at this time?
 
 
 36
 A. Yes, I did. It was delivered to me, brought up to my office. Not wanting to have $10,000 to carry in to my account, I made the client carry it across the street to the bank and give it to me to deposit.
 
 
 37
 Q. What, if anything, did you do at that time in regard to the client?
 
 
 38
 A. I returned a check to the client dated the same day. I made it out to the client for the same amount, as payee for $10,000.
 
 
 39
 Q. Did this have to do with the matter in which you represented the client as attorney?
 
 
 40
 A. Subsequently the client endorsed the check, payable to someone else.
 
 
 41
 Q. Did you have further dealings with that check in regard to the matter in which you represented the person?
 
 
 42
 A. Yes. He delivered the check to someone else.
 
 
 43
 Q. This had to do with the matter in which you were representing the person as attorney?
 
 
 44
 A. Yes.
 
 
 45
 In addition to this testimony, Tratner submitted to the court for an in camera inspection his file concerning the $10,000 transaction. Although the transcript does not reflect the fact, both parties at oral argument agreed that the judge examined the documents in the file. The file is not available to this court because it was not included in the record.
 
 
 46
 From the evidence presented in the transcript it cannot be said that Tratner sustained his burden of proving that the $10,000 transaction was part of a relationship in which the client was seeking legal advice. Since the transaction involved a promissory note it might well have been a business transaction not involved with the giving of legal advice. 'Attorneys frequently give to their clients business or other advice which, at least insofar as it can be separated from their essentially professional legal services, gives rise to no privilege whatever. (Citing cases.)' Colton v. United States, 2 Cir., 306 F.2d 633, 638 (1962), cert. denied, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963). See also, In re Estate of Busse, 332 Ill.App. 258, 267, 75 N.E.2d 36, 40 (1947).
 
 
 47
 We recognize that, on the record before us, Tratner has failed to sustain his burden of proof. Nevertheless, we believe that under the circumstances of this case, the taxpayer should be given the opportunity to include in the record the in camera materials and any other evidence which would reveal the underlying factual circumstances which he claims demonstrate the existence of the attorney-client privilege. If the government continues to seek the accounts, cancelled checks and deposit slips for transactions in the escrow account other than the $10,000 deposit and check, Tratner should also be permitted to introduce evidence in support of any privileges protecting these items.
 
 
 48
 Although it may be thought somewhat unusual to give the taxpayer a second chance to make his case, there is precedent for such a disposition. In United States v. Johnson, 5 Cir., 465 F.2d 793 (1972), a case with similar facts, the district court had conducted an in camera inspection of the attorney's files before making a determination of whether the attorney-client privilege was a defense to enforcement of an Internal Revenue summons. There, too, the record did not include the documents considered in camera. Despite the government's contention on appeal that the attorney's claim of privilege should be rejected for failure to carry his burden of proof, the court remanded the case for a redetermination of the privilege question. In order to assure that the redetermination would be subject to appellate review, the court directed that the record should include at least a general description of the materials held privileged. In United States v. Kovel, 2 Cir., 296 F.2d 918 (1961), the Second Circuit, on somewhat different facts, also chose to remand where the record lacked the evidence needed to determine the existence of the attorney-client privilege although the court acknowledged that the burden was on the person asserting the privilege to produce evidence supporting his claim.
 
 
 49
 We, therefore, vacate the judgment of the district court concerning items 1, 2 and 3 and remand for a redetermination of the privilege issue. On remand, the district court should make findings of fact and conclusions of law on the issue of whether the attorney-client privilege attaches to any transactions in the escrow account. Without revealing the information claimed to be privileged, the district court should state in general terms why the evidence does or does not satisfy the requirements for the privilege. With respect to the $10,000 transaction, there should be findings as to (1) whether it was integrally related to the giving of legal advice; (2) whether it was a business dealing or merely an attempt at concealment so unrelated to the giving of legal services as not to be protected by the attorney-client privilege; and (3) whether it was, in any event, a sham transaction. If, on remand, Tratner submits in camera materials for consideration by the district court they should be made a part of the record.
 
 OVERBREADTH
 
 50
 The only issue raised by the government's appeal is whether the district court erred in declining to enforce the summons for items 5 and 6 on the grounds of overbreadth. Items 5 and 6 sought all information regarding all deposits to and all checks written on the attorney escrow account during 1971.
 
 
 51
 The court may have concluded that these items were overbroad because they requested a substantial amount of information likely to be protected by the attorney-client privilege. These items are subject to the interpretation that they would have required the taxpayer to produce the complete file on every client who was in any way connected with any 1971 transaction in the taxpayer's attorney escrow account. In order to prevent the taxpayer from having the burden of asserting and proving the existence of the attorney-client privilege as to every document in each of these files, it is appropriate for a court to require the Internal Revenue Service to state with greater specificity the information sought. For example, in United States v. Dickinson, 308 F.Supp. 900 (D.Ariz.1969), aff'd, 9 Cir., 421 F.2d 702 (1970), the Internal Revenue Service had issued an attorney a summons to produce 'all books and records reflecting (his) accounts receivable.' The court said that the Internal Revenue Service did not have license to examine all of the attorney's files. The court found the summons 'somewhat ambiguous and subject to an overly broad interpretation' and ordered that the summons be limited to a schedule listing the clients and the amounts owed in order to protect the clients' confidential communications. Id., 308 F.Supp. at 901.
 
 
 52
 In the instant case, the attorney for the government stated at oral argument that items 5 and 6 were not overbroad because all the government was seeking was verification that the $10,000 transaction was only an 'in and out' transaction and did not represent taxable income to Tratner. Prior to the issuance of the summons Tratner had never been asked to produce information concerning any transactions in the escrow account other than the $10,000 transaction. Had the government limited its summons to the information necessary to verify that single transaction it would not have been subject to challenge for overbreadth, although, of course, the taxpayer would still have been able to raise and attempt to prove his claims of privilege with respect to that information as well. The district court was not in error in holding that items 5 and 6 were overbroad.
 
 
 53
 In light of the foregoing, the judgment of the district court with respect to items 5 and 6 is affirmed. The judgment with respect to items 1, 2 and 3 is vacated and remanded for further proceedings not inconsistent with this opinion.
 
 
 54
 Affirmed in part; vacated in part, remanded.
 
 
 
 [1]
 But see the treatment of privilege in Rule 501 of the Federal Rules of Evidence which have not yet taken effect. Pub.L. No. 93--595 (January 2, 1975)