Vincent R. SNEIDER, Plaintiff,

v.

KIMBERLY–CLARK CORPORATION,
Defendant.

No. 78 C 1361.

United States District Court,
N. D. Illinois, E. D.

Jan. 11, 1980.

Gerald D. Hosier, Hosier, Niro & Daleiden, Ltd., Chicago, Ill., for plaintiff.

Berton Scott Sheppard, Leydig, Voit, Osann, Mayer & Holt, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

OLGA JURCO, United States Magistrate.

Plaintiff and defendant have filed cross-motions to compel discovery. Each is resisting discovery through assertions of the attorney-client and work product privileges. Since this suit concerns the claim of privilege in a corporate and patent context, special emphasis will be placed upon the developing law of privilege in those areas. After a general survey of the law of privilege, the defendant's privilege claims will be examined and then the plaintiff's.

### A. THE ATTORNEY–CLIENT PRIVILEGE

■ The attorney client privilege is designed to encourage the free flow of communications. *See United States v. Upjohn*, 600 F.2d 1223 (6th Cir. June 28, 1979); *In re Langswager*, 392 F.Supp. 783 (N.D.Ill.1975).

Although many commentators have questioned the social utility of blocking "out the light," the privilege is generally received with deference if properly substantiated. Generally Note: *The Lawyer Client Privilege*, 56 Nw.U.L.Rev. 235 (1961). This judicial district, however, does urge that the privilege be narrowly construed. *In Re Transocean Sec. Litigation*, 78 F.R.D. 692 (N.D.Ill.1978). *See also* 8 J. Wigmore Evidence § 2291 at 554, (MacNaughton rev. ed. 1961).

The essential elements of the privilege have been outlined by Wigmore:

"(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived. 8 J. Wigmore, Evidence § 2292 (MacNaughton rev. 1961)." Id. at 904.

The burden of establishing these elements falls squarely upon the party asserting the privilege. *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *Interlego A. G. v. F. A. O. Schwartz, Inc.*, 196 USPQ 8, 11 n. 5 (N.D.Ga.1977); *See United States v. Tratner*, 511 F.2d 248 (7th Cir. 1975). The mere existence of the attorney-client relationship does not raise a presumption of confidentiality. *Tratner, supra; Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146 (So.Ca.D.C.1975). Therefore, the plaintiff and the defendant must demonstrate why the privilege should attach. In particular, this necessitates a showing of what parties were involved and the legal nature of the advice sought or rendered. *See Fisher v. United States, supra; Burlington Industries v. Exxon Corp.*, 65 F.R.D. 26 (1974).

Demonstrating why the privilege should be applicable to the corporate client is more complex. The attorney-client privilege has been recognized in the corporate setting since the 1960's. The problems inherent in the corporate use of privilege are summed up by the court in the *Upjohn* case, *supra:*

"The application of the privilege to corporate 'client' poses a somewhat different problem. Since corporations are inanimate, artificial entities, the attorney-client relationship is conceptually more difficult, and its underlying principles are less obvious. As clients, corporations can communicate to attorneys only through agents. Moreover, corporations, unlike individuals, are organized in such a way that responsibilities, and the information needed to fulfill the responsibilities, are delegated and compartmentalized."

Because the attorney-client privilege is not easily confined with respect to corporations, the circuits are split as to how the privilege should be applied. The "control group" test would permit the privilege to be claimed by personnel within the corporation who have authority to act upon the legal advice rendered. *City of Philadelphia v. Westinghouse Electric Corp.*, 210 F.Supp. 483 (E.D. Pa.1962). The Seventh Circuit has adopted the *Harper & Row* standard, known as the subject-matter test, and this alternative expands the availability of the privilege beyond the control group. That approach must be our guide in this case. The test is described as follows:

"The specification of the conditions varies, but the sum and substance are similar: If the agent is in possession of information acquired in the ordinary course of business relating to the subject matter of his employment, and the information is communicated confidentially to corporate counsel to assist him in giving legal advice to the corporation, then the communication is privileged. Under the 'subject-matter' approach, the privilege does not cover communication of pre-existing documents prepared for independent business reasons or communications unrelated to the subject matter of the agent's employment."

*Hercules, Inc. v. Exxon Corp.*, 434 F.Supp. 136 (D.C.Del.1977). *See Harper & Row Publishers, Inc. v. Decker*, 423 F.2d 487 (7th Cir. 1970) (Per curiam), aff'd without opinion by equally divided court, 400 U.S. 348,

91 S.Ct. 479, 27 L.Ed.2d 433 (1971); *See Diversified Industries, Inc. v. Meredith*, 572 F.2d 596 (8th Cir. 1977) (en banc). The court in the *Diversified* case narrowed the test slightly by requiring that the communication with counsel be at the direction of the corporate's superior for legal advice. Nevertheless, this test broadens the privilege by extending its protection to additional parties outside the "control group" who have contact with privileged "subject matter." Notwithstanding its breadth, the corporation still cannot secure the privilege's protection for non-legal or business advice. *See Valente v. Pepsico*, 68 F.R.D. 361, 367 (1975). Similarly, the courts will not permit the corporation to merely funnel papers through the attorney in order to assert the privilege. *Radiant Burners, Inc. v. American Gas Ass'n.*, 320 F.2d 314 (7th Cir. 1974). Therefore, even though the "control group" test is no longer the only viable test in this circuit, the corporation must still demonstrate all the elements of the privilege and justify the extension of the privilege to employees outside the control group.

## B. DEFENDANT'S CLAIM OF PRIVILEGE

■ In order to determine the availability of the privilege to the corporate client, it is necessary to consider the status of the parties involved. Subsequent to the *in camera* inspection of the defendant corporation's division of responsibility, it is clear that the listed employees fall either within the control group of the corporation or within the perimeter of parties contemplated by the subject-matter test insofar as their duties relate to the development of this new product. *See Harper and Row, supra.* The overwhelming number of documents in question either relate to the product development and patentability or negotiations by the control group with plaintiff Sneider. Therefore, the employees generating the documents occupy a suitable status for claiming the attorney-client privilege. Status alone, however, does not presumptively cause a privilege to attach. The claimant must demonstrate all the other elements of the privilege. *See Wigmore,*

*supra.* In the context of this case, the most essential elements are that the communication be for legal purposes, that the parties intended confidentiality, and that counsel was involved in a legal, not business capacity. *Tratner, supra; Exxon, supra; See also* Spector, *Confidential Communication Privileges*, 1971 Report of the Illinois Judicial Conference.

■ The defendant has claimed the shield of the attorney-client privilege for 120 documents. A third of those documents involve direct communications with its in-house patent counsel. (D. J. Hanlon). Courts have recognized the availability of the attorney-client privilege in patent areas, notwithstanding the public interest in disclosure. *Interlego, supra.* Furthermore, the fact that highly technical information, that is not legal, is mixed with requests for legal advice does not destroy the privilege. *Exxon, supra.* The protection of the privilege, however, is only available when the asserting party demonstrates that the technical data is confidential and primarily legal in nature. *Exxon, supra.*

■ Therefore, even though many of these documents partially contain technical, non-legal matters, any document which is essentially legal in nature will be held to be privileged. The *in camera* inspection has revealed that almost all of these documents meet the requirements of the privilege. Several documents, however, contain attachments. Attachments which do not, by their content, fall within the realm of the privilege cannot become privileged by merely attaching them to a communication with the attorney. To permit this result would abrogate the well-established rule that only the communications, not underlying facts, are privileged. See 2 J. Weinstein and M. Berger, *Weinstein's Evidence*, § 503(b)(04) at 503–37 (1976). Furthermore, since many of the attachments are already matters of public record or communications with outside parties, they cannot be privileged because the requisite confidentiality does not exist. Similarly, attachments containing business, not legal information, cannot be privileged. A specific listing of the court's

findings with respect to each document is attached.

■ The defendant also asserts that about fifteen documents involving communications to or from R. J. Miller, Kimberly-Clark's patent agent, are privileged. These documents do not involve any communication with an attorney. Although the representatives of an attorney will fall within the scope of the privilege, patent agents are not regarded as an attorney's representative. Proposed, but not adopted, Federal Rule of Evidence 503 defined representative of the attorney as: "one employed to assist the lawyer in the rendition of professional legal services," and contemplated inclusion of the routine personnel who act as agents of the attorney and provide the basic guideline. Patent agents, however, are regarded as separate entities who maintain an independent status and whose functioning is not contingent upon their affiliation with an attorney. Notwithstanding the quasi-legal service patent agents render, courts have declined to extend the privilege to the patent agent. To hold otherwise, one court has noted, would permit the privilege to be claimed by anyone having contact with an attorney. Such a result is regarded as an impermissible extension of the privilege. *Exxon, supra* at 40. *See also Duplan Corp., supra; Proposed Fed.R.Evid.*, 503. The efforts of Kimberly-Clark to circumvent this rule through a composed job description cannot dictate a holding contrary to law. It is incumbent upon the courts to be wary of attempts to insulate the corporation from making disclosures which would ordinarily be required of an individual client. Therefore, those communications to and from Mr. Miller, the patent agent, are not privileged, unless they involve direct consultation with counsel.

Another large group of documents were prepared by non-attorneys, and addressed to non-attorneys, yet copies were routed to counsel. Funneling papers past corporate counsel will not shield the communications from disclosure. *See Radiant Burners, supra.* In order to be privileged, it is essential that the communication be primarily for legal advice. *See Radiant Burners, supra; Exxon, supra; see also Wigmore, supra.* The *in camera* inspection of these documents reveals that several of the documents are not primarily legal in nature. This includes studies of the prior art, suggested alternatives to the Sneider product, business and product information, and other documents that do not constitute a confidential, legal communication. See *Exxon, supra; Duplan, supra.* Those documents within these categories therefore, do not fall within the permissible scope of the privilege. Other documents, however, are primarily legal. These documents reflect the necessary dissemination of legal information to the control group or other personnel. The findings of the court with respect to each document are attached. Documents are designated privileged and non-privileged.

■ Kimberly-Clark claims the privilege with respect to a large number of patent disclosures and draft patent applications. It is not apparent that any of these items were principally legal in nature or for purposes of legal advice. *Choat v. Rome Industries, Inc.*, 462 F.Supp. 728 (N.D.Ga. 1978). The touchstone of the attorney-client privilege is that the communications only are privileged, not any underlying facts or data. Much of the information contained in these documents reflects matters of public record of the research of the defendant. Confidential research information is not the equivalent of confidential legal communications. Therefore, it is consistent and logical to compel the production of these documents relating to the patent whether they are generated by attorneys, patent agents or inventors. *Duplan, supra. See also Choat, supra.* To sustain the privilege with regard to these documents would permit the attorney to function as a mere conduit and would impermissibly insulate the corporation from disclosure of non-legal, technical data. With respect to all documents falling within this category, the attorney-client privilege will not apply. Because the court finds that the attorney-client privilege does not extend to these

documents, it is not necessary to analyze plaintiff's contentions that these patent disclosures represent the corporation's waiver of the privilege.

■ Kimberly-Clark also asserts that the privilege extends to various "memos to file." Several of these memos were prepared by non-legal corporate personnel. They cannot possibly fall within the privilege because the intent for confidentiality is lacking. Moreover, a memo to file is not a communication directed to anyone for purposes of legal advice. *See* 8 J. *Wigmore* § 2292, *supra.* Similarly, memos to file prepared by counsel do not reflect an intention to confidentially communicate with a client. *See* 8 J. *Wigmore* § 2292, *supra.* Notwithstanding the source of the memo, therefore, it cannot fall within the ambit of the privilege.

Those memos to file prepared by counsel and agents of counsel will only be protected if they fall within the work product immunity. The immunity is an outgrowth of the Supreme Court's decisions in *Hickman v. Taylor* in 1947. The Supreme Court determined that a lawyer's files and papers, as well as thoughts and opinions developed in anticipation of litigation, should be immune from discovery. This would permit an attorney to properly prepare his case without unnecessary intrusions by the opposing counsel. *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The work product doctrine was subsequently codified in the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 26(b)(3) (1970).

■ The key to determining the applicability of the immunity is whether or not the papers are prepared in anticipation of litigation. All of the memos to file prepared by counsel and other corporate personnel are dated in the years 1972, 1973 and 1975. The current litigation was commenced April 11, 1978. Notwithstanding the time lapse, there are several memos prepared by counsel which concern threatened litigation by the plaintiff. Those memoranda falling within this category can be shielded by the privilege. *Sylgab Steel & Wire Co. v. Imoco-Gateway Corp.,* 62

F.R.D. 454 (D.C.Ill.1974) affirmed 534 F.2d 530 (7th Cir. 1976); *Natta v. Zietz,* 418 F.2d 633 (7th Cir. 1969). Those memos, however, which merely create a record of conversations or document efforts to circumvent patent infringement are not protected. Such information is not in anticipation of litigation. Furthermore, these memos generally reflect factual information not strategies or plans for litigation. *Mervin v. FTC,* 591 F.2d 821, 826 (D.C.Cir.1978).

Other miscellaneous documents do not fall into easy categories. Several of those documents concern communications with outside parties such as consumer-patent searchers and other corporations. Obviously, the involvement of third parties demonstrates a lack of intent for a confidential attorney-client communication. *Wigmore, supra.* Furthermore, a review of the documents reveals they are not primarily legal in nature and often do not involve any direct communication with counsel. Therefore, no privilege can attach. Similarly, unidentified handwritten notes cannot fall within the ambit of the privilege because the author cannot be shown, and the legal relevance of those notes cannot be ascertained. The privilege does not extend to the draft affidavit in defendant's materials. This is not by its very nature a communication which was intended to be confidential. Furthermore, since there is no indication counsel was involved in its drafting, and since we cannot ascertain its relevance to threatened litigation, the work product doctrine cannot apply. *See* Fed.R.Civ.Pro. Rule 26(b)(3) (1970).

The court is aware that this ruling requires the disclosure of sensitive business and research information. In their brief, the defendant has indicated their willingness to release this information pursuant to a suitable protective order. Therefore, the court directs the parties to draft a protective order for all documents to be produced by defendant.

### C. PLAINTIFF'S CLAIMS OF PRIVILEGE

Plaintiff asserts that the attorney-client privilege should shield some 89 documents

from discovery. Responding to the Magistrate's request for more precise identification sheet, plaintiff did so, but has not produced the documents for *in camera* review.

The plaintiff asserts in their briefs that the "claim of privilege is not challenged by Kimberly-Clark, and no legitimate basis has been suggested warranting the waiver of the privilege ..." (Plaintiff's Brief, p. 6). Indeed, the defendant has not stepped forward with any authority for not recognizing plaintiff's claim of the attorney-client privilege. The defendant, however, does not bear the burden in this matter. There is no presumption that the privilege will shield all attorney-client communication. The burden of demonstrating the privilege's applicability falls squarely on the plaintiff, and plaintiff must show that the necessary elements of privilege exist. *See Fisher, supra; Wigmore, supra.*

All of plaintiff's documents involve communications to and from its counsel. Unlike the problems inherent in the corporate privilege, the plaintiff's privilege is more clear cut. Sneider is an individual client and therefore the sole holder of the privilege. For the purposes of the privilege, he is an essential party to all communications. As in the corporate setting, the documents must have been confidential and for purposes of securing legal advice.

▋ Consistent with the court's findings regarding the defendant's assertions of privilege, certain patent-related documents will not be deemed privileged. The protection will not extend to papers, communications and documents relating to *ex parte* patent proceedings. *See Duplan, supra; Exxon, supra; Choat, supra.* The Supreme Court has clearly demanded complete candor in dealing with the patent office. *Walker Process Equipment, Inc. v. Food Machinery,* 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965). Therefore, just as the defendant is required to produce all patent disclosures, draft patent applications and technical, non-legal material related to the final patent, the plaintiff must produce equivalent documents relating to the patent

or patent reissue. Plaintiff is ordered to produce copies of all documents which fall within this category.

Plaintiff has withdrawn its claims of privilege to three documents: 2/11/70, Hopgood to Commissioner of Patents; 1/19/73, Lipow to Sneider; 6/6/75, Gansereit to Sneider.

Plaintiff now states its first-listed document of September 8, 1978 comes within work-product immunity, is held by its present trial counsel, Mr. Hosier, and is an inventory of Sneider files. It is not stated whether these are files prepared by counsel for his use in this litigation or whether they are a true "inventory" of his client's files. However, plaintiff, in his December 12, 1979 letter states it was authored by plaintiff's trial counsel, was made in anticipation of litigation and contains mental impressions and thoughts of plaintiff's trial counsel. It appears to negate these files as being those of the plaintiff. Absent a document examination, no ruling can be made on the claim.

The list of plaintiff's counsel, six in number, whose communications are claimed to be within attorney-client are: Roy C. Hopgood and his law firms—HCKB&L and SH&C; and Francis J. Murphy, assistant to Hopgood in law firm; G. D. Hosier—trial counsel in this action; Stephen B. Judlowe; Ralph R. Roberts; Webb & Borcorseski; Nims, Howes, Collison & Isner. It is urged by plaintiff that each withheld document is itself a confidential attorney-client communication or is a communication between different counsel retained by plaintiff, which makes references to confidential attorney-client communications.

▋ Thus, it is urged that all communications and copies involving Roy C. Hopgood and G. W. King, Patent Counsel to A. H. Robins Co. come within the attorney-client privilege because "Mr. Sneider and A. H. Robins were collective clients" of Mr. Hopgood. A. H. Robins Co. is identified as a "participant in a joint enterprise with Mr. Sneider and both retained Mr. Hopgood." (Plaintiff letter of December 12, 1979). A.

H. Robins is a third party not involved in this litigation. An attorney-client interest does not exist between attorneys in communications representing their respective clients. *Duplan Corp. v. Deering Milliken, Inc., supra*, p. 1172, *Rediker v. Warfield*, 11 F.R.D. 125, 127.

■■■■■ Plaintiff urges that Mr. Hopgood is a common attorney acting for plaintiff and A. H. Robins, a non-party to the action. He does not disclose the nature of the existent common interest as it relates to the action of and representation by Mr. Hopgood. In order that an attorney-client privilege prevail as to outsiders, the community of interest among joint clients must be an identical legal interest with regard to the subject-matter of the communications between an attorney and a client and must concern legal advice; it cannot be commercial in nature. It is not known what duty plaintiff owes to Robins in the so-called joint enterprise which requires that Robins be advised of communications between plaintiff and Hopgood, and vice-versa, and which require the services of an attorney representing interests of both parties or the nature of the common interest between them. It is true that where two or more persons having an interest in same problem jointly consult an attorney, their confidential communications to the attorney, though known to each other, remain privileged to outsiders. However, the doctrine of limited confidentiality applies only where there is a community of interest among different persons or separate corporations and where they have an identical legal interest with respect to the subject-matter of the legal advice communications between attorney and client. It cannot insulate communications relating to business or commercial interests. Thus, while the identified general subject-matter is claimed to deal with the plaintiff's patent, that mere fact is not sufficient to cloak the communication with attorney-client privilege. These communications total approximately 25 documents: 12 documents between Hopgood, the stated common attorney and patent counsel for Robins, where no copies were sent to plaintiff; 8 communications between Hopgood, the stated common attorney, and patent counsel for Robins, copies of which have been sent to plaintiff; 5 communications between Hopgood, the stated common attorney and the plaintiff, with copies to patent counsel for Robins; clearly, plaintiff cannot raise an attorney-client privilege for Robins. In addition, there may exist a waiver issue against plaintiff with regard to some of these documents.

■■■■ There are 36 communications which exist between Hopgood, the common attorney, and the plaintiff, without distribution of copies, and which are claimed to deal with Sneider patent subject-matter. As previously ordered, where these concern patent disclosure material, draft patent application and technical, non-legal material relating to the final patent, they are ordered to be produced. Again, letters to law firms as such, without specifying purpose for the communication, are not sufficient to evoke confidentiality merely because they occur between plaintiff's counsel and/or plaintiff. There are 12 such communications.

There is no showing that communications to third parties such as Mrs. Sneider and M. or B. Hushour, or "Ray" or Vi-Vin or RGC Jenkins & Co., spread, the cloak of attorney-client to such third party communications. These file documents—4/7/72, 4/11/72, 8/4/77, 6/23/75, 9/11/73—should be produced.

The following should be produced as not identifying their privileged subject-matter on Ex. 1 filed June 25, 1979:

| | |
|---|---|
| 1/4/71 | Plaintiff to Hopgood |
| 11/21/72 | King to Hopgood, copy to plaintiff |
| 12/11/72 | Plaintiff to Hopgood, note |
| 10/14/76 | Hopgood to plaintiff |
| 1/31/69 | Note |
| 4/27/75 | Plaintiff to Hopgood |
| 6/14/73 | Plaintiff to SH&C, statement |
| 1/5/76 | Plaintiff, first page of letter |
| 7/9/75 | RRR to plaintiff—summary, trip to USPO |
| 8/4/77 | Plaintiff to Ray |
| 3/31/75 | Plaintiff to HCKB&L, statement |
| 6/17/75 | Plaintiff to FJM |
| 10/14/76 | Hopgood to plaintiff |
| 1/5/77 | Plaintiff to Hopgood, letter 10/14/76 and statement |

| 1/5/77 | Plaintiff to Hopgood, letter 10/14/76 and 1973 and 1974 statement |
| 6/15/72 | Hopgood to plaintiff |
| 12/1/68 | SH&C to plaintiff, statement |
| 12/27/74 | Plaintiff to Hopgood |
| 8/17/76 | Plaintiff to Hopgood |
| 1/15/77 | Plaintiff to other plaintiff's counsel |
| 8/18/75 | Plaintiff to assistant to Hopgood |
| 8/4/75 & 7/7/75 | Plaintiff to HCKB&L, statement |
| 6/25/74 | Hopgood secretary to plaintiff |

The plaintiff is ordered to produce the documents deemed to be not privileged. In any event, all documents are ordered to be produced, unless plaintiff meets burden of attorney-client privilege and chooses to have an *in camera* review thereof. The court again recognizes that the documents to be produced may be of a very sensitive business or technical nature. Therefore, the parties are directed to work out a suitable protective order for production of the documents.

### D. PLAINTIFF SNEIDER MOTION TO COMPEL MORE COMPLETE ANSWER TO INTERROGATORY NO. 18

This interrogatory requests the following with respect to eight chronologies extracted from the defendant's storage files, entered as plaintiff's exhibit at the deposition of defendant employee:

a) the authors of the exhibit;

b) all recipients of the exhibit;

c) date prepared;

d) purpose for which prepared;

e) name of party directing preparation of the exhibit;

f) the identity of any documents to which the exhibit was attached or incorporated;

g) whether the exhibit is identified or referred to in any of the documents withheld from production on the grounds of the attorney-client privilege and if so the identity of each such document.

The court finds requests (a) through (f) reasonable requests and orders that defendant either respond, or as the plaintiff correctly states, the defendant must under oath allege that good faith efforts to obtain this information have been unsuccessful.

The court has determined that none of the attachments to the allegedly privileged documents were in and of themselves privileged. Therefore, ruling on subpart (g) is rendered moot because these attachments will be disclosed in accordance with the previous order.

### E. PLAINTIFF'S MOTION TO COMPEL DISCOVERY OF MARKETS AND SALES ABROAD

■ The defendant has previously asked Judge McGarr for a severance of the damage issue. Based upon plaintiff's assurances that the damage issue would not be complex, the motion was denied. Now, Kimberly-Clark asserts the plaintiff is raising the very complex issues they sought to sever.

The defendant must be well aware that at some point in time, regardless of severance, the plaintiff was going to demand these documents. It does not appear to the court that this request is unduly burdensome, complex or unforeseen. If defendant has cultivated a world-wide market with this product, the plaintiff should be entitled to this discovery. The defendant is ordered to produce the requested information. In the alternative, the defendant can make available the business records from which this information can be obtained, permitting the plaintiff to make his own inspection.

### F. DEFENDANT MOTION TO COMPEL ALL OF PLAINTIFF'S TAPE RECORDINGS RELATING TO SANITARY PADS

Defendant has sought to compel production of all tape recordings and transcripts concerning sanitary pads, including conversations with Johnson & Johnson, Kimberly-Clark and counsel. Plaintiff has offered to produce all non-privileged tape recordings, but asserts conversations with counsel are privileged. The court orders plaintiff to produce all non-privileged tapes. Plaintiff

is ordered to provide a list of all tapes and transcripts withheld on the basis of the attorney-client privilege, describing parties thereto, their role, and specific content of conversation.

## ORDER

It is ordered that defendant produce all documents to plaintiff, except the following: 69, 70–71, 72, 73, 74, 78, 79, 80, 81–82, 83–86, 116, 117, 118 (attachment not privileged), 122, 123–124, 129, 144–145, 147, 149–150, 169, 175, 274, 275, 277, 278, 279–290, 291, 299–300, 301–302, 303, 305–306, 307, 308, 314, 315, 316–320, 321, 327, 331, 332, 337–338, 340, 341, 342, 343–344, 345–346 (work product), 347–349 (work product), 350–351, 354–356, 357–358, 408, 413–414, 416, 418–419, 463, 468, 470–471, 546–549 and 571.

It is ordered plaintiff produce not only the documents specifically identified in this memorandum, but all documents coming within the category of documents generated by agents, attorneys, and inventors in the course of drafting and applying for patent, including material submitted by the client to attorneys, to be passed on to a third party or to a file, as described in the aforesaid memorandum. It is further ordered plaintiff produce all documents, unless plaintiff chooses to present certain documents for *in camera* review within ten (10) days from date hereof.

Production of all ordered documents shall be made within thirty (30) days from date hereof, subject to appropriate Protective Order limiting disclosure to counsel only.

It is further ordered defendant answer Plaintiff's Interrogatory No. 18 within ten (10) days; and plaintiff is to produce non-privileged tapes and/or transcripts and list of privileged tapes and/or transcripts within ten (10) days.