See also, D.C., 346 F.Supp. 845.

**EUTECTIC CORPORATION and New Metals Corporation, Plaintiffs,**

v.

**METCO, INC., Defendant.**

**No. 72 C 102.**

United States District Court,
E. D. New York.

Oct. 29, 1973.

Sandoe, Hopgood & Calimafde by Marvin N. Gordon, New York City (John M. Calimafde, New York City, of counsel), for plaintiffs.

Burgess, Dinklage & Sprung by Nathaniel D. Kramer, New York City (Arnold Sprung, New York City, of counsel), for defendant.

### MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiffs in this action for declaratory judgment challenging the validity of defendant's patents have moved for an order under F.R.Civ.P. 37(a) compelling the defendant to produce certain documents. The facts, as gleaned from the accompanying papers, do not appear to be in dispute. Plaintiffs and defendant agreed to a protective order in which defendant permitted plaintiffs to inspect the documents in its patent files and set aside those to be "duplicated for purposes of production." Plaintiffs did inspect defendant's documents, setting aside those it wished duplicated. Defendant did duplicate for plaintiff copies of all such requested documents, except for certain ones—identified by numerals 10, 16, 20–22, 75, 110–121, 143–148, and 302–307—which defendant contends are protected from disclosure by the attorney-client privilege. In its letter of transmittal, defendant also indicated which of those documents so duplicated

were nevertheless deemed privileged or confidential by defendant. All of this was done in compliance with the protective order, which also contemplated that "defendant shall not be deemed to have waived any privilege it may have regarding any document disclosed unless such waiver shall have been made expressly in writing."

The court has inspected *in camera* the documents in controversy with the consent of both parties. In making its findings, the court has also taken into account defense counsel's uncontroverted affidavit concerning the documents. The communications were generally among five men employed by defendant Metco, Inc.: (1) Ferdinand (Fred) Dittrich, a Project Engineer and co-inventor of the patents in suit; (2) Arthur (Bud) Shepard, Chief Engineering Consultant and co-inventor of the patents in suit; (3) Arnold Sprung, a patent attorney retained by defendant, and defense counsel here; (4) Herbert Ingham, Sr., Vice-President and patent liaison to Mr. Sprung; and (5) Herbert Ingham, Jr., assistant patent liaison to Mr. Sprung and son of Herbert Ingham, Sr.

More specifically, document 10 is a memorandum from Ingham, Sr., to Dittrich concerning a meeting of the previous day both men had with Sprung and requesting information Sprung asked for at the meeting. A carbon copy of the memorandum was apparently prepared for Sprung. Document 143–148 (identical to 302–307) is Dittrich's reply of a week later to Ingham, Sr., supplying the requested information. This document, although addressed to Ingham, Sr., was sent to Sprung shortly thereafter. The meeting concerned the drafting of the first patent application and the memoranda were generated as a result of questions raised by Sprung at the meeting.

Document 110–121 is a memorandum by Ingham, Jr., without an addressee.

It is a highly technical discussion which incorporates a series of suggestions requested by Sprung to assist him in preparing the patent applications. The memorandum was sent to Sprung shortly thereafter.

Sprung subsequently prepared a draft of the patent application, which he sent to Metco, Inc., raising several questions. Document 75 was written by Ingham, Jr. to comment on one of those questions. The document was apparently not sent to Sprung, but its substance was related to him shortly thereafter.

The following year Sprung requested further information pertaining to the patent application, generating documents 16 and 20–22. Document 16 is from Ingham, Jr. to Ingham, Sr., and discusses Sprung's request. Documents 20–22 contain related technical notes. These documents were apparently not sent to Sprung, but the information set forth therein was forwarded to him shortly thereafter.

I.

■■■ Plaintiffs do not dispute that the attorney-client privilege has been extended to corporate clients, Radiant Burners, Inc. v. American Gas Association, 320 F.2d 314 (7 Cir.), cert. denied, 375 U.S. 929, 84 S.Ct. 330, 11 L.Ed.2d 262 (1963), but argue instead that these particular documents were not within the scope of the attorney-client privilege because they were intra-corporate communications rather than communications between client and attorney. It is true that in a strict sense the attorney in this case was neither the sender nor the initial recipient of any of these documents. Yet he did receive either a copy of each document or the contents thereof in more summary fashion. If the subject matter of the documents was privileged, the remaining question is whether a more direct method of attorney-client communication was essential to bring them within the privilege.

The Proposed Federal Rules of Evidence have set forth the following general rule of privilege:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing *confidential communications made for the purpose of facilitating the rendition of professional legal services to the client,* (1) between himself or his representative and his lawyer or his lawyer's representative, or (2) between his lawyer and the lawyer's representative, or (3) by him or his lawyer to a lawyer representing another in a matter of common interest, or (4) *between representatives of the client* or between the client and a representative of the client, or (5) between lawyers representing the client. [Proposed Federal Rules of Evidence, Rule 503(b), 56 F. R.D. 236 (1973) (emphasis added).]

When compared with subdivision (1), it seems clear that subdivision (4) of the rule contemplates no requirement that, in a strict sense, the attorney or his representative must be either the sender or recipient of a confidential communication, but only that the communication, if made between "representatives of the client," must be "specifically for the purpose of obtaining legal services for the client." [1]

Plaintiffs quite properly point to earlier formulations of the rule whose language would seem to either exclude or fail to contemplate the circumstances of this case. See United States v. United Shoe Machinery Corporation, 89 F.Supp. 357, 358 (D.Mass.1950) (Wyzanski, J.); 8 Wigmore on Evidence § 2292 (McNaughton rev. 1961). See also Uniform Rule of Evidence 26; Model Code of Evidence, rule 210 (1942). Plaintiffs stress the fact that these were interdepartmental memoranda, which fall outside the attorney-client privilege, quoting from 8 in 1 Pet Products, Inc. v. Swift & Co., 218 F.Supp. 253, 254 (S.D. N.Y.1963), which in turn cited United States v. Aluminum Company of America, 193 F.Supp. 251 (N.D.N.Y.1960). Both cases appear to be distinguishable from the present case. In *8 in 1*, disclosure was sought of all defendant's documents between two departments of a large corporation with respect to a particular product which was the subject of the suit. The court found no privilege with respect to one such document, without passing on the factual question of whether or not the document was made specifically for the purpose of obtaining

---

1. Advisory Committee's Note to Subdivision (b), 56 F.R.D. 238–39. This and the other privilege rules in the Proposed Rules have met with stiff opposition in Congress, where the House Subcommittee on Criminal Justice proposed wholesale elimination of the privilege rules as initially set forth. The House Committee was of the view, contrary to the Advisory Committee, that in diversity actions, under the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), federal courts were bound to follow State privilege rules. For non-diversity cases, Congress suggested the following general rule:

   Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience . . . . [Staff of House Subcommittee on Criminal Justice of the Committee on the Judiciary, 93d Cong., 1st Sess., Rep. on Fed. Rules of Evidence, U.S.Code Cong. & Ad. News 2077, 2090 (Comm. Print 1973).]

   Of course, patent cases would come within this language. The House Committee's action then, while it amounts to a tentative rejection of the lawyer-client privilege rule as sent to it by the Supreme Court, does not amount to a substantive rejection of the rule as applied to patent and other non-diversity cases. Thus, to the extent that the rule represents the best of current thinking in the common law "in the light of reason and experience," it is unimpaired by Congress' tentative action in the context of this case and the court is inclined to view it as useful guidance in interpreting the common law.

legal services for the client. 218 F.Supp. at 254. In the *Alcoa* case, the importance of this requirement was stressed. A communication of business data to the attorney by the corporate client was also made, by copy, to the president of the company pursuant to a *separate* request. Despite the fact that the original was sent to counsel, the court found the president's copy to be a reply to a "separate request for non-privileged business data," and hence not privileged. 193 F. Supp. at 253.

In this case there is, on the current state of the record, no evidence of a *separate* request for information in these interdepartmental communications, apart from the need to channel information to Sprung, at his request, "to assist [him] in prosecuting the applications maturing into the patents in suit." Sprung Affidavit, para. 2. While it is admittedly quite possible that these memoranda also served the purpose of intra-corporate communication of otherwise non-privileged business data, the court is constrained to accept Mr. Sprung's uncontroverted affidavit showing the narrow function of these documents. The court's independent examination of the documents and the remainder of Mr. Sprung's affidavit concerning them do not contradict this view of the documents.

A leading case on the question of the extent of the attorney-client privilege in the corporate context is D. I. Chadbourne, Inc. v. Superior Court, 60 Cal.2d 723, 36 Cal.Rptr. 468, 388 P.2d 700 (1964).[2] In setting forth eleven basic principles for applying the privilege, the court stated that when an employee makes a report as required in the ordinary course of business, the privilege of that report is to be determined by the employer's purpose in requiring it, and when there is more than one purpose for such a report, "the dominant purpose will control, unless the secondary use is such that confidentiality has been waived." *Id.*, 36 Cal.Rptr. at 477–478, 388 P.2d at 709–710.

Therefore, even if plaintiffs were able to show some business function in a non-privileged sense, the court is of the view that where the dominant purpose of the communication is to facilitate the rendition of legal services to the client, and the communication itself or the substance thereof is transmitted to the lawyer shortly thereafter, the fact that the communication, at its inception, is within the corporate structure rather than directly with the attorney does not automatically defeat the privilege. The court believes this to be in accord with the general rule as expressed in the Proposed Federal Rules of Evidence, and the underlying purposes of the privilege. Equally as important, this view avoids an overly restrictive interpretation of earlier formulations in the context of the growing complexity of attorney-client communications in the corporate context, while restricting the privilege to matters of primarily legal significance.[3]

## II.

Plaintiffs contend, however, that regardless of how direct the communication with the attorney is, only a select group of employees of the client may claim the privilege for the client, and that communications from or directed to employees outside this "control group" vitiate the corporation's claim of the attorney-client privilege.

The recent history of the scope of the attorney-client privilege in the context of the corporate client reveals extensive disagreement among the courts over the

---

**2.** See McCormick's Handbook of the Law of Evidence § 87 at 178–79 (2d ed. 1972).

**3.** Cf. Judge Wyzanski's comments in *United Shoe,* where he looked askance at extending the privilege to documents that were primarily non-legal:

> Grist which comes to their mill has a higher percentage of business content than legal content. 89 F.Supp. at 360.

extent to which corporate employees may claim the privilege. See McCormick's Handbook of the Law of Evidence, § 87 at 178–79 (2d ed. 1972); Advisory Committee's Note (1), Rule 503(a), Proposed Federal Rules of Evidence (1973); Note, Attorney-Client Privilege for Corporate Clients: The Control Group Test, 84 Harv.L.Rev. 424 (1970); · Note, The Attorney-Client Privilege in the Corporate Setting: A Suggested Approach, 69 Mich.L.Rev. 360 (1970). This confusion, no doubt reflects the myriad variations on a single theme that occur when able attorneys seek to provide a wide range of legal services for their corporate clients. The court finds it unnecessary to enter this overly technical debate in a vain attempt to formulate from this case a general definition of the "representative of the client" who can, under proper circumstances, invoke the attorney-client privilege. It is noteworthy that, in addition to substantial disagreement among federal courts on the question, the Advisory Committee's initial effort to define "representative of the client"[4] was later abandoned in favor of a case-by-case approach. Advisory Committee's Note (1) to subdivision (a) of Proposed Federal Rules of Evidence, R. 503, 56 F.R.D. 237 (1973).

Instead, this court chooses to ask generally, whether, under all the relevant circumstances, including but not limited to: the nature and content of the communications, the extent of their disclosure within the corporation, and the relationship of the employees involved to the communication and to the corporation, the employees concerned may be thought to have acted as representatives of the client for purposes of recognizing the privilege. While we agree that a more specific "bright-line" test would be more helpful in regulating primary private activity and in easing the burden of judicial decisionmaking,[5] this court is in no position to resolve the widespread conflict.

Turning then, to the facts as set forth above, all of these communications were among and apparently restricted to a small group of four men at Metco, Inc., concerned with and apparently responsible for the preparation of patent applications, and the inventor of the particular patent in question. The documents they communicated among themselves contained information collected for the dominant purpose of facilitating the attorney's efforts to provide services[6] to the client, and the information in every instance was, in one form or another, communicated to the attorney. Under the circumstances, the court can perceive no sound reason to artfully distinguish between "information-givers" and "decision-makers" among this small group of the corporate client's employees, for the purpose of holding some of these documents within the privilege and others not.

### III.

The court next understands plaintiffs to contend that even if these could be characterized as legitimate attorney-client communications, they are nevertheless not privileged as they deal with the technical aspects of preparing patent applications. Plaintiffs point to Channel Master Corp. v. RMS Electronics, Inc., 159 U.S.P.Q. 344 (S.D.N.Y. 1965); Jack Winter, Inc. v. Koratron Co., 172 U.S.P.Q. 201 (N.D.Cal.1971). The court, however, reads these cases to render non-privileged only communications which are exclusively technical,

4. Proposed Rules of Evidence for the United States District Courts and Magistrates (Preliminary Draft 1969), R. 5–03, 46 F.R.D. 161, 249 (1969). The proposed rule stated: "A 'representative of the client' is one having authority to obtain professional legal services, or to act on advice rendered pursuant thereto, on behalf of the client." *Id.* at 250.

5. See Note, 84 Harv.L.Rev. 424, 426–27, 430 (1970).

6. Whether or not those services were "legal services" is considered in part III *infra.*

and not documentr which, although "containing considerable technical factual information," are "nonetheless primarily concerned with giving legal guidance to the client." 172 U.S.P.Q. at 202. There is also considerable authority for the proposition that if the communications deal with other than mere technical matters, they are immune to discovery proceedings. Ellis-Foster Co. v. Union Carbide and Carbon Corp., 159 F.Supp. 917, 919 (D.N.J.1958); Chore-Time Equipment, Inc. v. Big Dutchman, Inc., 255 F.Supp. 1020 (W.D.Mich.1966).

■ The court can see no good reason to distinguish, as plaintiffs do without reason, between documents involved in the preparation as opposed to the prosecution of patent applications. Moreover, the cases are well-summarized in Ledex, Inc. v. United States, 172 U.S. P.Q. 538 (Ct.Cl.1972), which criticized an earlier line of cases which sought to distinguish the largely technical activities of patent lawyers involved in various patent solicitation activities as outside the practice of law. This court agrees with the Court of Claims, in its implied approval of the *Chore-Time* case *supra*, that a finding of some legal significance in each document is necessary. 172 U. S.P.Q. at 540. See also Panduit Corp. v. Burndy Corp., 172 U.S.P.Q. 46 (N.D.Ill. 1971).

■ In determining just which of the documents in dispute here have legal significance, the court is not unmindful of the natural tension between the underlying federal policy which favors full and complete disclosure of all significant evidence prior to trial, and the more general public policy, in which the privilege is grounded, to promote freedom of consultation with attorneys by minimizing the apprehension of compelled disclosure of confidential communications. While the court does not sub-

scribe to the view that a client may be deprived of the privilege simply because his correspondence with a technically able attorney also involves highly technical matters, the possibility for abuse seems great and the danger of violence to the federal policy of liberal discovery high.[7] On the other hand, it would seem no substantial disincentive to a client in need of sophisticated technical-legal advice to demonstrate, when disclosure is sought, a reasonably clear showing that documents containing technical matters communicated in confidence are primarily of a legal nature and involve the rendition of legal advice. This is in accord with the general rule requiring the party who asserts the privilege to prove its applicability to each communication for which it is claimed. See Honeywell, Inc. v. Piper Aircraft Corp., 50 F.R.D. 117, 120 (M.D.Pa.1970).

Applying these principles to the documents in this case, the court is obliged to rely on the defendant's uncontroverted affidavit that the documents were prepared to assist the lawyer in prosecuting the applications for the patents now in suit. To the extent that this broad assertion is not contradicted by the inspection of each document on its face, this use of the documents is a minimally adequate showing of their primarily legal nature, and the attorney-client privilege will not be defeated simply because the documents are also highly technical.

Documents 10, 143–148, and 302–307 are a direct product of an attorney-client meeting, copies of which were sent to the attorney to assist him in the preparation of patent applications. The documents deal with the potential and proven uses of a new invention. While such matters are largely technical, they are also undoubtedly necessary to successfully prepare and prosecute a patent

---

7. See Radiant Burners, Inc. v. American Gas Association, 320 F.2d 314, 323 (7 Cir. 1963). Other courts have expressed concern about attempts "to avoid disclosure by funneling

papers and documents into the hands of lawyers for custodial purposes." Natta v. Zletz, 418 F.2d 633, 637 (7 Cir. 1969).

application. The court believes that there has been an adequate showing of legal significance to warrant the protection of the privilege.

In contrast, document 110–121 is a highly technical memorandum which on its face does not appear to have been prepared in response to any particular attorney-client conference or request for information. Defendant avers, however, that the memorandum was sent to its attorney "shortly thereafter," and that it deals with suggestions to assist counsel in preparation of a continuation patent application. Without more, there is little to indicate that the document was not "funnelled" to the attorney with a view toward protection from disclosure. However, the document concludes with a list of "suggested claims" which appear to refer to possible technical strategies which might be adopted in the continuation patent application. The court thus finds an adequate showing of legal significance.

Document 75 was prepared in response to the attorney's draft of the patent application, and its substance was related to the attorney shortly after its preparation. Like document 110–121, it also contains statements of possible claim strategies. The court finds this document to be within the privilege.

Document 16 discusses a request from the attorney for further information concerning the patent application. It also discusses possible strategies in the content and timing of the patent application. The substance of the document was communicated to the attorney shortly after its preparation. The court also finds it to be within the privilege.

The three documents 20–22 are, defendants claim, "related" to document 16. They are brief and technical, containing little ordinary language. On their face, these documents have little or no intrinsic legal significance. This puts them on less substantial ground than some of the other documents, especially in light of the fact that they were communicated to the attorney only "in substance." Nevertheless, the court is constrained to accept the assertion that the documents were "related" to a document which does have a right to protection, and that like all the other documents, they were prepared to assist the lawyer in prosecuting the patent applications. Therefore, the court finds these documents to be within the attorney-client privilege.

### IV.

Plaintiffs' final argument is that whatever privilege might have existed in these documents for defendant was waived when defendant voluntarily disclosed similar documents. Plaintiffs cite the well-established rule that voluntary disclosure of a significant part of the matter is a waiver of the privilege with respect to the entire matter. Defendant does not dispute the general rule but questions its applicability to a course of communications over the period of several years.

The court finds it unnecessary to deal with this question, for it agrees with defendant's further claim that that rule has no applicability to this case. Prior to any discovery in this case by defendant, plaintiffs and defendant executed a protective order which contemplated a special method of discovery for the particular case and expressly provided there would be no waiver of any privilege unless expressed in writing. The documents in dispute here were disclosed pursuant to that arrangement, but were not among those duplicated for plaintiffs. If the language of the protective order is to be applied in the instant case, its requirement of express waiver would seem to preclude any argument of waiver to be implied by a particular course of conduct, especially one contemplated in the order itself.

Plaintiffs have not responded to this argument and have failed to cite any authority that defendant's course of conduct vitiates the express waiver agree-

ment. Nor will this court comb the precedents, if there be any, in an attempt to justify circumvention of a clear expression of the intent of the parties. The court can perceive no sound reason of public policy to rewrite an agreement which facilitates disclosure, closely protects a legitimate privilege, and contemplates a cooperative effort by both parties. Therefore, the attorney-client privilege is not deemed waived by whatever partial disclosure may have occurred in this case.

Accordingly, with respect to all documents listed in the affidavit of September 12, 1973 of Arnold Sprung, Esq., as still in dispute, *i. e.*, documents 10, 16, 20–22, 75, 110–121, 143–148, and 302–307, the motion to compel production of documents is hereby denied.

So ordered.