STATUS TIME CORPORATION,
Plaintiff,

v.

SHARP ELECTRONICS
CORPORATION,
Defendant.

No. 81 Civ. 1051 (CLB).

United States District Court,
S. D. New York.

March 17, 1982.

**28**

Bernard Malina, New York City, for plaintiff Status Time Corp.

Bernard Sweeney, Birch, Stewart, Kolasch & Birch, Falls Church, Va., and Wender, Murase & White, New York City, for defendant Sharp Electronics Corp.

## ORDER

NINA GERSHON, United States Magistrate:

The defendant, Sharp Electronics Corporation ("Sharp"), has moved pursuant to Rule 37(a) of the Federal Rules of Civil Procedure to compel production of documents. The plaintiff in this action, Status Time Corporation ("Status"), alleges that Sharp has infringed its United States patent entitled "Talking Solid State Timepiece" as follows: On December 21, 1976 the patent for the "Talking Solid State Timepiece" was issued in the name of Robert W. Lester to Camin Industries Corporation as the assignee thereof. The patent was then assigned to the plaintiff. Subsequent to this assignment the defendant manufactured and sold talking solid state timepieces embodying the inventions of Claims 1 and 4 of the "Talking Solid State Timepiece" patent, thereby infringing the plaintiff's patent.

The plaintiff now seeks to withhold 32 documents; these documents are divided into three groups. Documents A through S are documents that were found in a file belonging to Thomas B. Graham, Esq., the attorney who, until his death, prepared and prosecuted Mr. Lester's patent application. Status withheld these documents from production at the deposition of Eugene E. Geoffrey, Jr., a former law partner of Mr. Graham, who had produced them in response to a subpoena duces tecum.

Documents Y through EE are correspondence between Pennie and Edmonds, the law firm that assumed responsibility for the prosecution of the Lester application after the death of Mr. Graham, and various foreign patent agents, relating to the foreign counterparts of the Lester patent application. Documents T through X are other documents relating to the Lester application that were found in the files of Pennie and Edmonds. Status withheld these documents from production at the deposition of Clyde C. Metzger, Esq., a member of the firm of Pennie and Edmonds.

Document FF, the final document withheld from production, is a letter from Steven Feldman, Esq., a patent attorney, to David Wolf, president of Status, expressing his opinion as to the validity of the Lester patent.

Status has withheld these documents, claiming that they are protected from disclosure by the attorney work-product doctrine and the attorney-client privilege. Sharp argues, first, that these documents are not protected by these privileges. Secondly, it argues that even if they did apply, the protection has been waived because document FF has been voluntarily produced to a third party. Lastly, Sharp argues that the attorney-client privilege has

been abrogated because the patent was fraudulently obtained in that two of the figures in the patent application, Figures 7 and 3, had been copied from a brochure written by the Master Specialties Company.

## ATTORNEY WORK–PRODUCT DOCTRINE

The plaintiff claims that all of the withheld documents are protected from disclosure by the work-product doctrine. Federal Rules of Civil Procedure 26(b)(3) provides, in part, that

"... a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and *prepared in anticipation of litigation* or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials ...."
(Emphasis added)

The sole claim advanced by the plaintiff in support of its argument that the documents were prepared in anticipation of litigation is that, because a patent is an instrument that prevents others from making, using or selling the patented invention, possible litigation in enforcement of the patent is contemplated at least as early as the time of preparation and filing of the patent application.

■■■ This clearly does not establish that the "documents [were] prepared in anticipation of litigation" within the meaning of Rule 26(b)(3), for "[i]t is not enough that the mere possibility of litigation exists". *Burlington Industries v. Exxon Corp.*, 65 F.R.D. 26, 43 (D.Md.1974). Rather, the test to be applied is whether, in light of the nature of the documents and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. 8 Wright & Miller, *Federal Practice and Procedure* : Civil § 2024 at pp. 197–199. "Materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not un-

der the qualified immunity provided by this subdivision [26(b)(3)]." Advisory Committee's Notes to Rule 26(b)(3), 48 F.R.D. 487, 501.

The plaintiff has failed to show that the document was prepared with an eye toward litigation. All of the documents for which the privilege is claimed were generated before this lawsuit arose or was in prospect. They are not protected by the attorney work-product doctrine.

## THE ATTORNEY–CLIENT PRIVILEGE

Sharp contends that the attorney-client privilege does not apply to any documents relating to the preparation or prosecution of a patent application. This argument is without merit.

■■ In order for the privilege to apply, the following requirements (as stated by Judge Wyzanski in *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358–359 (D.C.Mass.1950)) must be met:

"(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client."

Early cases held that the privilege did not apply to communications arising out of the prosecution of patent applications, for in prosecuting them, the patent attorney was not "acting as a lawyer". In *Zenith Radio Corp. v. Radio Corp. of America*, 121 F.Supp. 792 (D.Del.1954), relied upon by the defendant, the Court stated, at p. 794, that attorneys do not "act as lawyers" when:

"not primarily engaged in legal activities; when largely concerned with technical as-

pects of a business or engineering character, or competitive considerations in their companies' constant race for patent proficiency, or the scope of public patents, or even the general application of patent law to developments of their companies and competitors; when making initial office preparatory determinations of patentability based on inventor's information, prior art, or legal tests for invention and novelty; when drafting or comparing patent specifications and claims; *when preparing the application for letters patent or amendments thereto and prosecuting same in the Patent Office*; when handling interference proceedings in the Patent Office concerning patent applications." (Emphasis added)

*Georgia-Pacific Plywood Co. v. United States Plywood Corp.*, 18 F.R.D. 463 (S.D.N.Y.1956), also relied upon by the defendant, held that communications from house counsel will qualify for the attorney-client privilege, if house counsel "acted as lawyers" in connection with the communications. Relying on *Zenith Radio Corp.*, the Court found that

"Communications dealing exclusively with the solicitation or giving of business advice, or with the technical engineering aspects of patent procurement or with any other matters which may as easily be handled by laymen are not privileged." (*Id.*, at p. 464)

However, the Court went on to find that

"To the extent that particular communications were largely concerned with opinions on law, legal services or assistance in some legal proceeding, [house counsel] was acting as an attorney, and if the other qualifications are satisfied, these communications are privileged." (*Id.*, at p. 465)

Then, in *Sperry v. State of Florida*, 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963), the Supreme Court held that the State of Florida could not enjoin a non-lawyer registered to practice before the United States Patent Office from performing, within Florida, tasks incident to the preparation and prosecution of patent applica-

tions before the U.S. Patent Office. The Court did not base this holding on a finding that the work done by the patent practitioner was not legal work. On the contrary, the Court stated, at p. 383, 83 S.Ct. at p. 1325,

"We do not question the determination that under Florida law the preparation and prosecution of patent applications for others constitutes the practice of law. *Greenough v. Tax Assessors*, 331 U.S. 486 [67 S.Ct. 1400, 91 L.Ed. 1621]; *Murdock v. Memphis*, 20 Wall. 590 [22 L.Ed. 429]. Such conduct inevitably requires the practitioner to consider and advise his clients as to the patentability of their inventions under the statutory criteria, 35 U.S.C. §§ 101–103, 161, 171, as well as to consider the advisability of relying upon alternative forms of protection which may be available under state law. It also involves his participation in the drafting of the specification and claims of the patent application, 35 U.S.C. § 112, which this Court long ago noted "constitute[s] one of the most difficult legal instruments to draw with accuracy," *Topliff v. Topliff*, 145 U.S. 156, 171 [12 S.Ct. 825, 831, 36 L.Ed. 658]. And upon rejection of the application, the practitioner may also assist in the preparation of amendments, 37 C.F.R. §§ 1.117–1.126, which frequently requires written argument to establish the patentability of the claimed invention under the applicable rules of law and in light of the prior art. 37 C.F.R. § 1.119."

After the *Sperry* decision, many courts specifically stated that the holding of *Zenith Radio Corp.* is no longer authoritative. *See, e.g., Hercules Inc. v. Exxon Corp.*, 434 F.Supp. 136, 147 (D.Del.1977) ("Since . . . *Sperry v. State of Florida*, 373 U.S. 379 [83 S.Ct. 1322, 10 L.Ed.2d 428] . . . [t]he holding of early cases such as *Zenith Radio Corp.* . . . is consequently of little weight"); *Garrison v. General Motors Corp.*, 213 F.Supp. 515, 519 (S.D.Cal.1963) (The *Sperry* case is "poles apart from the *Zenith* case"). *See generally Ledex, Inc. v. United States*, 172 USPQ 538 (Ct.Cl.1972). In addition, other courts, while not specifically re-

lying on *Sperry*, have also reached the conclusion that communications to and from a lawyer engaged in preparing or prosecuting a patent application are protected by the attorney-client privilege so long as the requirements of the privilege are otherwise met. *See, e.g.,* cases cited *infra* at p. 31.

The defendant acknowledges the *Sperry* decision, but argues that the law in this Circuit is that all documents prepared by an attorney in connection with the preparation or prosecution of a patent application are unprivileged. In support of this argument the defendant relies on *Channel Master Corp. v. RMS Electronics, Inc.,* 159 USPQ 344 (S.D.N.Y.1965), and *D & S Plug Corp. v. Colvin Motor Parts, Inc.,* 166 USPQ 391 (E.D.N.Y.1970).

In *Channel Master Corp.,* Judge Cooper, citing *Georgia-Pacific, supra,* and *Zenith Radio Corp., supra,* stated that documents originating from the preparation and prosecution of patent applications are generally not to be considered privileged for they are communications dealing exclusively with technical engineering aspects of patent procurement. 159 USPQ at 345. Although the defendant interprets *Channel Master* as rendering all documents dealing with the preparation of patent applications non-privileged, Judge Neaher in *Eutectic Corp. v. Metco, Inc.,* 61 F.R.D. 35, 40–41 (E.D.N.Y. 1973), found that it only held to be non-privileged, "communications which are exclusively technical and not documents which, although 'containing considerable technical factual information', are 'nonetheless primarily concerned with giving legal guidance to the client' ".* The defendant's reliance on *D & S Plug Corp., supra,* for the proposition that *all* documents prepared in connection with a patent application are unprivileged is also misplaced. In that case the Court held that a letter from the plaintiff's former attorney informing him of the results of an infringement search and expressing his opinion on the patentability of the product was protected by the privilege while four letters discussing the requirements for filing a patent application were not. 166 USPQ at 392.

■ Thus, I find that, if documents arising from the preparation or prosecution of patents meet the requirements discussed *supra,* p. 29, they are protected by the privilege. *See, e.g., Hercules Inc. v. Exxon Corp., supra.* Although communications which are exclusively technical do not fall within the privilege, the attorney-client privilege is not lost merely because the communication contains technical data. *Chore-Time Equipment, Inc., supra,* 255 F.Supp. at 1023. If documents containing considerable technical factual information are nonetheless primarily concerned with asking for or granting legal advice, as opposed to giving business or technical advice, they are privileged. *E.g., Eutectic Corp. v. Metco, Inc., supra,* 61 F.R.D. at 41; *Jack Winter, Inc. v. Koratron Co., Inc.,* 54 F.R.D. 44, 46–47 (N.D.Cal.1971).

Accordingly, the plaintiffs are directed to produce documents A through X for an *in camera* inspection for the purpose of determining which documents are covered by the attorney-client privilege.

## FOREIGN PATENT AGENTS

The plaintiff has withheld documents Y through EE claiming that they are protected from disclosure by the attorney-client

---

* To the extent that *Channel Master* can be read as the defendant reads it, I decline to follow it, and follow instead the decisions discussed *supra,* at pages 30, 31. It may be noted that Judge Cooper rejected the defendant's argument that *Sperry v. State of Florida* was relevant to the case before him:

"... defendant's reliance on *Sperry v. State of Florida* ... is without merit. This case does not deal with privilege and does not in any way alter the concept of privilege as applied in discovery proceedings." (*Id.*)

Although *Sperry* did not directly involve the question of attorney-client privilege, it did involve, in part, the question whether the patent agent acts as a lawyer when preparing or prosecuting patent applications and thus indirectly involved one of the requirements of the privilege. Therefore, like the courts in the cases cited on pages 30, 31, *supra,* I find that *Sperry* is relevant to the question whether the attorney-client privilege applies to the preparation and prosecution of patent applications.

privilege. These documents are correspondence between Pennie and Edmonds and various British, West German and Swiss patent agents relating to the prosecution of foreign patent applications corresponding to the Lester patent.

As noted above, in order for the privilege to apply, the person to whom the communication was made must be a member of a bar of a court or his subordinate. This is so because "the general purpose of the attorney-client privilege is 'to promote freedom of consultation of legal advisers by clients'". *Application of John Doe*, 464 F.Supp. 757, 758 (S.D.N.Y.1979) (citing 8 Wigmore, *Evidence*, § 2291, at 545 (McNaughton rev. ed. 1961)). Thus, many courts that have been presented with the issue have held that the attorney-client privilege does not apply to foreign patent agents, for they are not "attorneys at law" and thus do not satisfy the requirement that the communication be made to a member of the bar. *See, e.g., Burlington Industries v. Exxon Corp., supra,* 65 F.R.D. at 40; *Ledex, Inc. v. United States, supra,* 172 USPQ at 540; *Rayette-Faberge, Inc. v. John Oster Manufacturing Co.,* 47 F.R.D. 524, 526 (E.D.Wis.1969) **; *Joh. A. Benckiser G.m.b.H., Chemische Fabrik v. Hygrade Food Products Corp.,* 253 F.Supp. 999, 1001–1002 (D.N.J.1966). Moreover, while the attorney-client privilege "protects communications to the attorney's clerks and . . . other agents" (8 Wigmore, *Evidence,* § 2301) it does not extend to foreign patent agents for they are not agents of the attorney. *Burlington Industries, supra,* 65 F.R.D. at 40.

In arguing that the privilege should apply to foreign patent agents, the plaintiff relies solely on *Duplan Corp. v. Deering Milliken, Inc.,* 370 F.Supp. 761 (D.S.C.1972). This reliance is misplaced. The plaintiff has cited the case as holding that documents involving patents, in the hands of Leo Soep, a "conseil en brevents d'invention" (a French patent advisor not a member of the French

bar), would be protected to the extent that he acted in France in a capacity equal to patent house counsel in the United States. This holding is inapposite to the facts at bar. Indeed, while the Court held that communications between the "conseil" and his clients, in France, were protected, it also held that his communications with clients regarding United States patents were not protected because "Under the decisions of United States Courts, Leo Soep, not an attorney, does not place over his client . . . any umbrella of protection". *Id.,* at 768.

In contrast to the cases discussed above, there are a number of cases which have held that the privilege does apply to foreign patent agents. These decisions are based on a variety of rationales. *See In Re Ampicillin Antitrust Litigation,* 81 F.R.D. 377, 392–393 (D.D.C.1978); *Venitron Medical Products, Inc. v. Baxter Laboratories, Inc.,* 186 USPQ 324, 325–326 (D.N.J.1975); *In re Yarn Processing Patent Litigation,* 177 USPQ 514 (S.D.Fla.1973); *Jack Winter, Inc. v. Koratron Co., Inc., supra,* 54 F.R.D. at 48.

In *Venitron,* the Court, recognizing that "patent matters are in a unique field of law", stated that patent agents who were registered with the Patent Office and had to observe the Code of Professional Responsibility should not be distinguished from patent attorneys merely because they were not members of the bar: "The substance of the function, rather than the label given to the individual registered with the Patent Office, controls the determination here" (186 USPQ at 325). Although the Court was discussing American patent agents, it stated that its reasoning applied equally to foreign patent agents: "The same situation obviously exists in connection with the processing of patent claims in other countries, and the nature of the subject is such that patterns essentially the same as those which exist in the United States are found there. And where a specifically authorized representative of one country conveys information to his counterpart in another country

---

** Although the opinion does not specifically refer to the patent agents as foreign, another reported version of the case contains an Editor's note stating that the patent agents were British (*See* 163 USPQ at 374).

in connection with the processing of a patent application, such communications would also be privileged" (*Id.*, at pp. 325–326).

In *In Re Ampicillin Antitrust Litigation, supra,* the Court applied a different rationale and distinguished American patent agents from foreign patent agents. As to American patent agents it held that because *Sperry v. Florida, supra,* held that the American patent agent and American patent attorney stand on equal footing when representing clients in patent proceedings before the Patent Office and because the freedom to choose between the two would be impaired if the attorney-client privilege were not applied to communications involving patent agents, the privilege did apply (*Id.*, 373 U.S. at p. 393, 83 S.Ct. at p. 1330). As to foreign patent agents, the Court reasoned that, because the United States does not have a strong interest in patent agent communications relating to patent activities in foreign countries, the availability of the attorney-client privilege for foreign patent agent communications is governed by the law of the country in which the patent activities relate (*Id.*, at p. 391, 83 S.Ct. at p. 1329).

In *Jack Winter, Inc. v. Koratron Co., Inc., supra,* for reasons unexplained by the Court, communications between the defendant's attorney, a Chicago patent firm, and a British patent agent were treated as though they were between attorney and client (*Id.*, at 48). Finally, in *In Re Yarn Processing, supra,* the Court relied solely on *Jack Winter, Inc., supra,* for its holding that British patent agents "[can] be party to privileged communications" (177 USPQ at 514).

These cases do not persuade me to deviate from the fundamental principle that only communications between an attorney or an agent of the attorney and his client are covered by the privilege. Clearly there are many relationships to which a measure of confidentiality may be appropriate; however, the privilege has not been expanded to include them. Thus, for example, there is no privilege for the communications between an accountant and his client. *See, e.g.,* 5 Weinstein, Korn and Miller,

*New York Civil Practice,* ¶ 4503.03 at 45–112. *Cf. U. S. v. Kovel,* 296 F.2d 918 (2d Cir. 1961) (holding that in the unique circumstances in which an accountant was employed for eighteen years by a law firm specializing in tax law, and was an employee under the direct supervision of the law partners, he might be considered an agent of the attorneys and thus the privilege might apply to communications to him from clients of the law firm). As set forth in *In Re Horowitz,* 482 F.2d 72, 81 (2d Cir. 1973), *cert. den.,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973):

> "The [attorney-client] privilege finds its justification in the need to allow a client to place in his lawyer the 'unrestricted and unbounded confidence', *United States v. Kovel, supra,* 296 F.2d at 921, that is viewed as essential to the protection of his legal rights. But the privilege stands in derogation of the public's 'right to every man's evidence', 8 Wigmore, *supra* § 2192, at 70, and as 'an obstacle to the investigation of the truth,' *id.,* § 2291, at 554; thus, as Wigmore has said, 'It ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle.' *Id.*"

Some measure of confidence may be appropriate between a client and a foreign patent agent just as it might be appropriate, as noted above, between a client and his accountant, or for that matter, between a client and his banker or his investment adviser. However, the necessity for "unrestricted and unbounded confidence" between a client and his attorney which justifies the uniquely restrictive attorney-client privilege simply does not exist in the other relationships. Expanding the privilege to treat foreign patent agents as if they are lawyers improperly expands the privilege beyond its proper bounds.

Accordingly, since the plaintiff failed to show that the foreign patent agents were either members of a bar of the United States, or their agents, I find that documents Y through EE are not privileged. The plaintiff is directed to produce them.

## WAIVER

The defendant contends that the attorney-client privilege attaching to document FF, a letter from plaintiff's attorney to the plaintiff's president, has been waived because of its possession by a third-party, Dr. Payn, an officer of plaintiff's assignor of the Lester patent.

Whether viewed as an indication that confidentiality is not intended or as a waiver of the attorney-client privilege, disclosure by a party to a third person of a communication with his attorney eliminates any privilege the communication might otherwise possess. *In Re Horowitz, supra,* 482 F.2d at 81. As stated by the Court in that case, at pages 81–82, "It must be emphasized that it is vital to a claim of privilege that the communications between client and attorney were made in confidence and have been maintained in confidence. And, as with all privileges, the person claiming the attorney-client privilege has the burden of establishing all essential elements." When possession of an otherwise privileged document by a third-party destroys the confidentiality which is the purpose for the privilege, the privilege no longer applies. *United States v. Kelsey-Hayes Wheel Company,* 15 F.R.D. 461, 464 (E.D.Mich.1954). Moreover, the burden of maintaining confidentiality rests with the party. *Id.,* at 465; 8 Wigmore, *Evidence,* §§ 2325, 2326 (McNaughton rev. 1961).

Here, it is undisputed that Dr. Payn is in possession of the letter. While the plaintiff disputes Dr. Payn's testimony as to exactly how and why the letter came to be in his possession, the plaintiff offers no affirmative explanation for how Dr. Payn obtained it. For example, there is nothing to suggest that he obtained it through theft or deceit. *See Weinstein's Evidence,* ¶ 503(b)[02]. *But see Wigmore, supra.* Nor is there any claim that disclosure was through mere inadvertence. *Cf. Control Data Corp. v. International Business Machines Corp.,* 16 Fed.Rules Serv.2d 1233 (D.Minn.1972); *Connecticut Mutual Life Insurance Co. v. Shields,* 18 F.R.D. 448, 451 (S.D.N.Y.1955).

Accordingly, I find that there no longer exists a privilege as to the June 15, 1979 letter from plaintiff's attorney to an officer of the plaintiff. However, the defendant's argument that the loss of privilege as to this one document should be treated as a waiver as to all privileged documents bearing on the same subject matter is rejected. It is true that, under some circumstances, disclosure of a confidential communication "may effect a waiver of privilege not only as to that communication, but also as to other communications made during the same consultation and communications made at other times about the same subject". *United States v. Aronoff,* 466 F.Supp. 855, 862 (S.D.N.Y.1979). However, here, as in *Aronoff,* there has been no showing whatever that those circumstances exist.

\* \* \*

The plaintiff is directed to produce to the defendant documents Y through FF. Documents A through X are to be produced for *in camera* inspection at a hearing to be held on April 1, 1982 at 2:15 p. m. If any are held to be privileged, the issue of fraud will be addressed.

SO ORDERED.