CUNO, INCORPORATED, Plaintiff,

v.

PALL CORPORATION, and Pall Ultrafine Filtration Corporation, Defendants.

No. CV–86–3197 (JBW).

United States District Court, E.D. New York.

July 5, 1988.

Willian Brinks Olds Hofer Gilson & Lione Ltd., Chicago, Ill. by Steven Z. Szczepanski, Glen P. Belvis, James R. Sobieraj, Clyde F. Willian (Michael E. Zall, of counsel), for plaintiff.

Leydig, Voit & Mayer, Chicago, Ill. by H. Michael Hartmann, Norval B. Galloway, for defendants.

## MEMORANDUM AND ORDER

CAROL BAGLEY AMON, United States Magistrate.

### Introduction

Extensive discovery has been conducted in this action which involves claims and counterclaims for patent infringement in the field of membrane technology. Presently before me is the motion of the defendants Pall Corporation and Pall Ultrafine Filtration Corporation (Pall) made pursuant to Fed.R.Civ.P. 37 to compel the plaintiff Cuno Incorporated (Cuno) to pro-

duce documents withheld under claims of attorney-client privilege and/or the attorney work product doctrine.

At my direction, the plaintiff produced for *in camera* inspection the disputed documents and provided a cover sheet for each document setting forth: (a) the identity of the author; (b) the position of the author; (c) the identity and position of the named recipients; (d) the identity of any other individuals who received the document; (e) the intended purpose of the document; and (f) a statement of the reasons why the document is privileged or otherwise immune from discovery. These cover sheets were also provided to Pall. Cuno's submission was additionally accompanied by the affidavit of Michael E. Zall, Vice President and General Counsel of Cuno, who states that he reviewed and assisted in the preparation of the cover sheets and that each sheet accurately reflects the facts and circumstances pertaining to the attached document. (Aff. of Michael E. Zall dated March 31, 1988).

Cuno produced sixty-four documents for review asserting that the attorney-client privilege applied to each document. For the purposes of review and decision, the documents have been grouped in five broad categories: (1) invention submissions by Cuno's technical staff to its patent department;[1] (2) communications between Cuno employees which plaintiff claims either reflect confidential communications made to or by an attorney or contain confidential requests for information from attorneys to Cuno employees that were redelegated to other employees; (3) minutes of patent review meetings; (4) communications to and from a patent agent, and (5) miscellaneous documents.

### Discussion

The purpose of the attorney-client privilege is to encourage the complete disclosure of information between the attorney and the client and to further the interests of justice. *Upjohn Co. v. United States,*

449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). Consequently, communications that fall within the privilege are immune from discovery. Since the privilege is an obstacle to the investigation of the truth, however, the privilege is confined within its narrowest possible limits. *In re Ampicillin Antitrust Litigation,* 81 F.R.D. 377, 384 (D.D.C.1978); *Weil Ceramics & Glass, Inc. v. Work,* 110 F.R.D. 500, 504 (E.D.N.Y.1986); *United States v. United Shoe Machinery Corporation,* 89 F.Supp. 357, 358 (D.Mass.1950).

The essential elements of the privilege have been set forth in *United States v. United Shoe Machinery Corp:*

(1) the asserted holder of the privilege is or sought to become a client;

(2) the person to whom the communication was made

(a) is the member of the bar of a court, or his subordinate and

(b) in connection with this communication is acting as a lawyer;

(3) the communication relates to a fact of which the attorney was informed

(a) by his client

(b) without the presence of strangers

(c) for the purpose of securing primarily

(i) an opinion of law or

(ii) legal services or

(iii) assistance in some legal proceeding, and not

(d) for the purpose of committing a crime or tort; and

(4) the privilege has been

(a) claimed and

(b) not waived by the client.

*Id.* at 358–59; *Status Time Corporation v. Sharp Electronics Corporation,* 95 F.R.D. 27, 29 (S.D.N.Y.1982).

The burden of establishing the elements of the privilege rests with the party asserting it. *Detection Systems, Inc. v. Pittway Corporation,* 96 F.R.D. 152, 154 (W.D.N.Y. 1982) (citing *Fisher v. United States,* 425

---

**1.** Many of the documents at issue are technically documents of AMF and refer to employees of AMF, the predecessor company of Cuno. For the purposes of this opinion, the term "Cuno" refers both to AMF and Cuno.

U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976)).

The broad categories of documents will be addressed in accordance with these principles. Additionally, attached to this opinion is an appendix setting forth the decision as to each individual document.

### 1. *Invention Submissions*

■ The documents reviewed *in camera* and labelled invention submissions in general describe either a process, a technique or the result of an experiment and are primarily and, in many instances entirely, technical presentations.

According to Cuno, the documents were "... prepared by Cuno (AMF) employees and confidentially submitted to Cuno's patent department" for the purpose of conveying information gathered from notebooks and monthly reports to attorneys and patent agents in Cuno's patent department in order for them to give a legal opinion on the patentable aspects of that information. Cuno states that the information contained in the submissions (i.e., the reports and notebooks) has been produced to Pall (Belvis Aff. dated Nov. 30 1987 at ¶ 5). Cuno further maintains that as a general matter these invention disclosures were kept in confidence by the patent department and were not mere transmittals of technical information to be converted into patent applications and filed with the patent office (Cuno Cover Sheet to Ex. 1). With respect to each document submitted, Cuno states on the accompanying cover sheet that the information in the particular invention disclosure was submitted confidentially to the patent department for the purposes of obtaining an opinion on patentability and infringement. There is no indication that any other party received the document (See response "d" on each sheet).

The dispute of the parties concerning these documents involves the applicability of the attorney-client privilege to records containing technical data. Pall contends that the courts have held that attorney-client communications that contain wholly technical data are not privileged (Pall Reply at 2). To permit the privilege to apply would, in Pall's view, "... permit the attorney to function as a mere conduit and impermissibly insulate Cuno from disclosure of non-legal technical data." (Pall Memo in Support at 6). In so asserting, Pall relies on a series of cases which have held that the privilege is not applicable to technical information provided to a patent attorney for the purposes of completing a patent application. The cases relied upon by Pall hold that privilege does not apply in these circumstances either because the client is not seeking legal advice and/or the requisite confidentiality is lacking since the information is ultimately intended to be provided to the Patent Office. *See e.g., Weil Ceramics & Glass, Inc. v. Work,* 110 F.R.D. at 504; *Detection Systems, Inc. v. Pittway Corporation,* 96 F.R.D. at 155.

*United Shoe* requires that the communication be made "for the purpose of securing primarily (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding". *United States v. United Shoe Machinery Corporation,* 89 F.Supp. at 358. This standard has been interpreted to require an inquiry into the primary purpose of the communication. *Eutectic Corporation v. Metco, Inc.,* 61 F.R.D. 35, 39 (E.D.N.Y.1973); *Sneider v. Kimberly–Clark Corporation,* 91 F.R.D. 1, 5 (N.D.Ill.1980); *General Foods Corporation v. The Nestle Company, Inc.,* 218 U.S.P.Q. 812, 815 (D.N.J.1982). The cases are uniform in the patent field that where the primary purpose is securing legal advice, the privilege will be upheld despite the inclusion of technical data in the communication. *See e.g., Jack Winter, Inc. v. Koratron Company, Inc.,* 54 F.R.D. 44, 46 (N.D.Cal.1971) (classifying technical presentations conditioned on the need to respond to a legal problem as privileged); *American Optical Corporation v. United States,* 180 U.S.P.Q. 143, 144 (Ct.Cl.1973) (invention submission held to be privileged where it was determined there was a request for legal advice regarding the invention described therein); *see also Knogo Corporation v. United States,* 213 U.S.P. Q. 936 (Ct.Cl.1980); *Hercules Incorporated v. Exxon Corporation,* 434 F.Supp. 136 (D.Del.1977).

In *Hercules* and *Knogo*, the courts specifically addressed the applicability of the privilege to documents similar to the invention submissions under consideration here. In *Hercules*, the court concluded that the privilege applied to communications between counsel and the chemists in Hercules' research department that contained technical data. *Hercules Incorporated v. Exxon Corporation*, 434 F.Supp. at 147–148. The court found that the chemists were operating under the express or implied direction of their superiors to supply counsel with technical information for the purpose of requesting legal advice. *Id.* at 146. Similarly, in *Knogo* the court addressed the status of a technical communication which it was argued contained no specific request for legal advice. Although the court found that the particular document at issue contained an express request for a legal opinion, it noted that the privilege does not require that the request be within the four corners of the document. The court upheld the privilege, stating that the document "... contains the usual interchange which occurs between an inventor and his patent attorney." *Knogo Corporation v. United States*, 213 U.S.P.Q. at 941–942, n. 8.

In this case, Cuno has asserted through the affidavit of both trial counsel and the patent attorney directly familiar with the subject documents that the purpose of these technical submissions was to seek a legal opinion on patentability or infringement and that they were transmitted in confidence and held in confidence in the patent department. Although the documents on their face do not expressly seek legal advice, nothing contained in the documents undercuts the assertions of the uncontroverted affidavits concerning the stated purpose of these communications. Each submission, which contains information culled from other, non-privileged sources,[2] is on a specifically designed form for com-

munication between the inventor and the patent attorney. They are addressed to the "patent department", which consists of patent counsel and patent agents.[3] The fact that the submissions exclusively contain technical data is not controlling. *Knogo Corporation v. United States*, 213 U.S. P.Q. at 940. The domain of the patent lawyer is a highly technical one. The determination of whether an invention is new, useful and unobvious necessarily requires an analysis of the technical aspects of the invention, which in turn must be compared to the technical aspects of the prior art.

Cuno has stated that in general its invention submissions are not mere transmittals of technical information to be converted into patent applications and accordingly do not constitute the type of technical submission found unworthy of the privilege in the cases cited by the defendant. A review of the documents does not cast doubt on this assertion.

In any event, it should be noted that the Court of Claims in its well-reasoned opinion in *Knogo* criticizes the logic of the case law relied upon by the defendant. As the court there observes, the critical issue is not whether the information is purely technical or whether it later finds its way into a patent application but whether the communication was made in confidence to the attorneys. *Id.* at 940–942. Here counsel by affidavit has attested to the confidential nature of the communications.

Accordingly, based upon review of the invention submissions considered in light of the affidavits of trial and patent counsel, I find the documents to be privileged.

### 2. Communications Between Non–Attorneys

The documents in this category consist of communications between non-attorneys that Cuno claims either reflect confidential communications made to or by an attorney, or reflect confidential requests from attor-

---

**2.** These sources are inventors' notebooks, which have been produced to Pall. Consequently, Pall is not being deprived of the information contained therein, but is merely being denied access to the communication between the inventor and counsel.

**3.** The applicability of the privilege to communications with patent agents is discussed more fully in section 4 of this report.

neys to a Cuno employee that were in turn delegated to another employee.

■ The issue here involves the application of the attorney-client privilege in the corporate context. In general, the corporate client consists of corporate employees, acting at the direction of their corporate superiors, who communicate to counsel that which is needed to supply the basis for legal advice. *Upjohn Co. v. United States*, 449 U.S. at 394, 101 S.Ct. at 685; *General Foods Corporation v. The Nestle Company, Inc.*, 218 U.S.P.Q. at 814; *Chubb Integrated Systems Limited v. National Bank of Washington*, 103 F.R.D. 52, 66 (D.D.C. 1984). The privilege protects the "... giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. at 390, 101 S.Ct. at 683. In order for the privilege to apply, (1) the communication should have been made for the purpose of securing legal advice; (2) the employee making the communication should have done so at the direction of his corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication should have been within the scope of the employee's duties; and (5) the communication should not have been disseminated beyond those persons who need to know the information. 2 J. Weinstein & M. Berger, *Weinstein's Evidence*, ¶ 503(b)(4) at 503–54.

■ There is nothing in the documents in this category that suggests that the information was distributed to those who did not need to know the information, or that the employees were not acting within their corporate duties or at the direction of their corporate superiors. However, a number of the documents cannot be considered within the attorney-client privilege because it is evident from the nature of the communication that it was not made primarily for the purpose of obtaining legal advice. *See Eutectic Corporation v. Metco, Inc.*, 61 F.R.D. at 38 (stating that there appears to be no requirement that the sender or the recipient must be an attorney, but noting that the purpose of obtaining legal services

must be present). In a number of instances, although the information on the cover sheet arguably supports the assertion of the privilege, an inspection of the document itself fails to support a finding that the primary purpose of the document was to seek legal advice or services. In other cases, the assertions on the cover sheet at best pertain to only limited portions of the documents and only these portions were found to be privileged (*See e.g.*, Items, 43, 47, 48 & 53). In short, Cuno failed to meet its burden with respect to a number of documents and portions of documents in this category.

Where documents were held privileged in this grouping, it was apparent that the communication from one employee to another was for the purpose of the second employee transmitting the information to counsel for advice. (*See e.g.*, 42). Other documents reflect the requests and directions of counsel transmitted from one employee to another for the purposes of obtaining the information for counsel on which legal advice was to be premised. (*See e.g.*, 54).

*3. Patent Review Meeting Documents*

The documents here consist of memoranda of patent review meetings which reflect decisions made on various inventions. According to Cuno, the decisions reached were made in part on the basis of legal advice. These appear to be the same documents that Cuno stated in their earlier affidavits reflect decisions made on the basis of "... legal advise (sic) as well as on other considerations". (Belvis Aff. dated Dec. 8, 1987 at ¶ 4). Pall has challenged Cuno's claim of privilege on the ground that Cuno has not demonstrated the legal nature of the documents, noting specifically that if the documents are based on nonlegal considerations they are not privileged. (Pall Reply at 4–5).

■ As discussed earlier, the primary purpose of the communications must be for securing legal advice. *Eutectic Corporation v. Metco, Inc.*, 61 F.R.D. at 39; *Sneider v. Kimberly–Clark Corporation*, 91 F.R.D. at 5; *General Foods Corporation*

*v. The Nestle Company, Inc.,* 218 U.S.P.Q. at 815. The attorney-client privilege does not protect nonlegal communications based on business advice given by a lawyer. *Union Carbide Corporation v. Dow Chemical Company,* 619 F.Supp. 1036, 1046 (D.C. Del.1985); *Chubb Integrated Systems Limited v. National Bank of Washington,* 103 F.R.D. at 66. Where a lawyer mixes legal and business advice the communication is not privileged unless "the communication is designed to meet problems which can fairly be characterized as predominantly legal". 2 J. Weinstein & M. Berger, *Weinstein's Evidence,* ¶ 503(a)(1)(01) at 503–22.

■ Examination of these documents in conjunction with Cuno's affidavits does not in most instances support the privilege. Cuno has merely stated that the decisions arrived at are based in part on legal advice, which is not sufficient. In addition, in most instances, the documents themselves provide no indication as to the basis for either going forward with or abandoning a particular invention. It is entirely possible that these decisions have been predominantly made for business rather than legal reasons.

More importantly, however, Cuno cites no authority for the novel proposition it advances here; namely, that a decision of a company to proceed with or forego a certain course of action is itself privileged where that decision is in whole or in part based upon legal advice on the apparent theory that the decision itself necessarily reflects the advice. Under Cuno's theory any inquiry into a decision made by a company would be privileged where the decision was based upon legal advice. This is plainly an unwarranted extension of the privilege. It is not the decision itself that is privileged but the confidential communications to and from the attorney and client that resulted in that decision. *See United States v. Freeman,* 619 F.2d 1112, 1119–1120 (5th Cir.1980) (an attorney's recommendation to proceed with a transaction does not cloak incidents of the transaction itself in secrecy).

In several instances limited portions of the documents have been held privileged. For example, where the document with respect to a given invention submission set forth a direction to counsel to pursue a legal course of action or set forth a legal opinion of counsel, that portion of the document was held privileged. The balance of such documents, however, are to be produced.

### 4. Patent Agent Documents

■ Two documents for which Cuno asserts the privilege pertain to communications to and by Charles Worth, a patent agent for Cuno. Cuno asserts that the documents reflect legal advice and opinions pertaining to existing patents. A supplemental affidavit submitted by Cuno states that Worth was acting under the authority and control of Cuno's attorneys (Pfluger affidavit dated June 29, 1988). Cuno also submitted a letter from the United States Patent Office stating that Worth was a registered patent agent.

Pall has not challenged these communications on the basis of Worth's status as a patent agent. In any event, the weight of authority holds that the privilege applies to confidential communications with patent agents acting under the authority and control of counsel, *W.R. Grace & Co. v. Pullman Incorporated,* 446 F.Supp. 771, 776 (W.D.Okla.1976); *Hercules Incorporated v. Exxon Corporation,* 434 F.Supp. at 146.

The documents at issue summarize meetings between Worth and employees of Cuno. Those portions of the documents which reflect the legal advice and opinions of Worth have been held privileged. The balance of the documents which cannot be fairly viewed as either reflecting his opinions or seeking his advice have not been held privileged and must be produced (*See, e.g.,* Item 58 at No. 5284; this page in part refers to a meeting Worth apparently did not attend).

### 5. Miscellaneous Documents

There are eight remaining documents which cannot be grouped within any of the previously described categories. (See key

to appendix for a description of the miscellaneous documents). In my review, I found a claim of privilege to be properly asserted to seven of the eight documents.

In that one case (Item 37), I find simply that Cuno has not met its burden. The cover sheet which seeks to set forth the basis for the attorney-client privilege is inherently contradictory. It asserts no privilege to the communication itself which was made to counsel, but to counsel's notes on that document. Yet the basis for the assertion of the privilege is that the notes reflect Zall's understanding of a "confidential" communication. Thus on the one hand Cuno asserts no privilege to the communication but on the other hand claims it is confidential for the purposes of asserting a privilege to counsel's notes.

An inspection of the remainder of the documents with one remaining exception supports the claim in the cover sheets that the documents reflect confidential communications to or from the corporate client and counsel relating to the rendition of legal services and thus are protected by the attorney-client privilege.

■ The exception is Item 20. Item 20 consists of notes taken by a Cuno employee at the direction of counsel at a meeting held on February 14, 1985 between representatives of Cuno including a senior patent attorney and representatives of Pall.

Although I see no basis for the application of the attorney-client privilege to these notes, Cuno argues additionally that these notes should be shielded from disclosure as work product or trial preparation materials pursuant to Fed.R.Civ.P. 26(b)(3). A review of the notes in conjunction with the assertions in the cover sheet demonstrates that they were taken by a Cuno employee at counsel's request and that litigation over the matters discussed was clearly anticipated. These notes do not appear to be a verbatim account of the meeting and one could glean from their review what issues Cuno felt to be important in any future litigation. Accordingly, since the notes were generated by an agent of an attorney in anticipation of litigation and there has been no showing of any substantial need or undue hardship in obtaining the equivalent of these notes by Pall, the notes are not discoverable. Fed.R.Civ.P. 26(b)(3).

### Conclusion

Listed in the Appendix to this opinion are my specific rulings as to each of the sixty-four documents reviewed *in camera*. The plaintiff is directed to produce the non-privileged documents and portions of documents within ten days of the date of this Order.

SO ORDERED.

## APPENDIX

| Item | Bates No. | Document Type | Decision | Privileged Portions To Be Redacted |
|------|-----------|---------------|----------|-------------------------------------|
| 1 | 144693–96 | IS | P | |
| 2 | 46908 | IS | P | |
| 3 | 46974–80 | IS | P | |
| 4 | 47574 | IS | P | |
| 5 | 47575 | IS | P | |
| 6 | 47688 | IS | P | |
| 7 | 54938–40 | IS | P | |
| 8 | 54991 | IS | P | |
| 9 | 55517 | IS | P | |
| 10 | 15493–536 | MISC | P | |
| 11 | 15594–97 | IS | P | |
| 12 | 12102–04 | IS | P | |
| 13 | 10873–76 | IS | P | |
| 14 | 139659 | IS | P | |
| 15 | 46248 | PRM | PP | Redact under invention ## 16650 and 16671 from word "MEZ". |
| 16 | 47458 | PRM | N | |
| 17 | 47735 | PRM | N | |
| 18 | 59296–97 | PRM | N | |

| Item | Bates No. | Document Type | Decision | Privileged Portions To Be Redacted |
|---|---|---|---|---|
| 19 | 56324–25 | PS * | | |
| 20 | 139217–29 | MISC | P ** | |
| 21 | 46032–34 | PRM | PP | Redact comment at end of pg. 46433. |
| 22 | 46039–42 | PRM | PP | Redact under Invention # 16737—from word "covered"; under # 16515 from word "decision". |
| 23 | 46063–65 | PRM | PP | Redact comment at end of pg. 46064. |
| 24 | 46082–87 | PRM | PP | Redact under Invention ## 16146 and 16347 beginning with word "consider". |
| 25 | 46116–20 | PRM | N | |
| 26 | 46686–87 | PRM | PP | Redact first sentence on pg. 46687. |
| 27 | 46688–89 | PRM | N | |
| 28 | 46857–58 | PRM | N | |
| 29 | 48972 | PRM | N | |
| 30 | 47735 | PRM | N | |
| 31 | 47737–40 | PRM | PP | Redact under Invention ## 16689 and 16690 beginning with word "decision"; redact note at bottom of pg. 47740 |
| 32 | 47741–46 | PRM | N | |
| 33 | 35218–19 | PRM | PP | Redact pg. 35219. |
| 34 | 35244–49 | PRM | PP | Redact first sentence on pg. 35248. |
| 35 | 55460 | PRM | N | |
| 36 | 4931 | MISC | P | |
| 37 | 47557–58 | MISC | N | |
| 38 | 144638–45 | CBNA | P | |
| 39 | 144673–90 | IS | P | |
| 40 | 144543,B–48,B | CBNA | P | |
| 41 | 46731 | CBNA | N | |
| 42 | 50648–58 | CBNA | P | |
| 43 | 14623 | CBNA | PP | Redact first sentence of ¶ 3 on pg. 14623. |
| 44 | 50789–807 | CBNA | P | |
| 45 | 51254 | CBNA | P | |
| 46 | 51440–55 | PS * | | |
| 47 | 48947 | CBNA | PP | Redact ¶ 1. |
| 48 | 50410–20 | CBNA | PP | Redact ¶ A on pg. 50412 & 50413; all of 50414; first two ¶ s of pg. 50415. |
| 49 | 61480–81 | CBNA | N | |
| 50 | 54786 | CBNA | N | |
| 51 | 50719–20 | CBNA | N | |
| 52 | 28764–72 | CBNA | P | |
| 53 | 40151 | CBNA | PP | Redact ¶ 2. |
| 54 | 39499 | CBNA | P | |
| 55 | 28629–30 | MISC | P | |
| 56 | 27448–49 | MISC | P | |
| 57 | 15198–207 | MISC | P | |
| 58 | 11905 | PA | PP | Redact ¶ 2 on pg. 11905 |
| 59 | 11256 | CBNA | P | |
| 60 | 10720–21 | MISC | P | |
| 61 | 5754–55 | MISC | P | |

| Item | Bates No. | Document Type | Decision | Privileged Portions To Be Redacted |
|---|---|---|---|---|
| 62 | 5283–85 | PA | PP | Redact pg. 5283 from "The primary purpose" to end of pg; pg. 5284 to end of first full ¶ ending with "art". |
| 63 | 139164–66 | CBNA | P | |
| 64 | 13937–41 | CBNA | P | |

\* Pall has withdrawn its challenge to the patent searches
\*\* Privileged as work product

KEY

1. Abbreviations
P       Privileged
N       Not Privileged
PP      Partially Privileged

CBNA    Communication between non-attorneys
IS      Invention Submission
MISC    Miscellaneous
PA      Document concerning advice given by patent agent
PRM     Patent Review Meeting Document
PS      Patent Search

2. Description of Miscellaneous Documents
# 10    Corrected copy of invention disclosure, draft application, and letters to and from outside counsel
# 20    Notes of meeting between Pall and AMF
# 36    Invention submission review
# 37    Attorney's notes on document
# 55    Letter between in-house and outside counsel
# 56    Memorandum of Patent Meeting
# 57    Comments on Patent Examiner's Rejection
# 60    Memorandum of Patent Meeting
# 61    # 56 and # 61 are copies of the same document