**STRYKER CORPORATION and Osteonics Corporation, Plaintiffs,**

v.

**INTERMEDICS ORTHOPEDICS, INC. and Marli Medical Supplies, Inc., Defendants.**

**No. CV 90–3006 (ADS).**

United States District Court, E.D. New York.

May 22, 1992.

---

John A. Diaz, Morgan & Finnegan, New York City, for Stryker Corp. and Osteonics Corp.

Ralph C. Dawson, Fulbright, Jaworski & Reavis, McGrath, Frank B. Wyatt, II, Fulbright & Jaworski, New York City, for Intermedics Orthopedics, Inc. and Marli Medical Supplies, Inc.

## ORDER

ORENSTEIN, United States Magistrate Judge.

In this patent infringement action, defendants seek to compel production of certain documents from plaintiffs. Plaintiffs, however, have objected to such production claiming that said documents are protected from discovery because of the attorney-client privilege and work-product immunity. Pursuant to my order, plaintiffs have submitted the purported privileged documents for an *in camera* inspection.

## DISCUSSION

### A. *Attorney–Client Privilege*

■ The attorney-client privilege encourages complete disclosure of information between the attorney and client and to further the interest of justice. *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). Communications that fall within the privilege are immune from discovery. The burden of establishing the elements of the privilege rests with the party asserting it. *Detection Systems, Inc. v. Pittway Corp.*, 96 F.R.D. 152, 154 (W.D.N.Y.1982). The attorney-client privilege is defined by Wigmore as

(1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

VIII J. Wigmore on Evidence § 2292 (McNaughten rev. 1961). In the context of a patent lawsuit, "[t]he party claiming the privilege *must clearly* show that a document renders legal advice and does not, for example, merely contain facts later disclosed in a patent or trademark application." *Allegheny Ludlum Corp. v. Nippon Steel Corp.*, 1991 WL 61144 at *2 (E.D.Pa. Apr. 15, 1991) [emphasis added]. In such a case, the attorney is considered to be "merely serving as a conduit for factual information." *Bio–Rad Laboratories, Inc. v. Pharmacia, Inc.*, 130 F.R.D. 116, 126 (N.D.Cal.1990). Nonetheless, where the primary purpose is securing legal advice, "the privilege will be upheld despite the inclusion of technical data in the communication." *Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 201 (E.D.N.Y.1988). "The fact that the submissions exclusively contain technical data is not controlling." *Id.* at 202. Cases have held that "an attorney-client privilege" will be upheld where the document "... contains the usual interchange which occurs between an inventor and his patent attorney." *Id.*

The domain of the patent lawyer is a highly technical one. The determination of whether an invention is new, useful and unobvious necessarily requires an analysis of the technical aspects of the invention, which in turn must be compared to the technical aspects of the prior art.

*Id.* In addition, "[t]he attorney-client privilege does not protect nonlegal communications based on business advice given by a lawyer." *Id.* at 204. Based on the documents submitted *in camera*, the court must draw a fine line when determining whether a communication seeks business advice or conveys technical information needed for processing the patent application as opposed to a communication which seeks or gives legal advice.

### B. *Work–Product Immunity*

Rule 26(b)(1) of the Federal Rules of Civil Procedure permits discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ..." Fed.R.Civ.P. 26(b)(1). However, Rule 26(b)(3) affords qualified protection to "documents and tangible things ... prepared in anticipation of litigation or for trial" by a party or a party's representative. The party seeking such disclosure must demonstrate a "substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed.R.Civ.P. 26(b)(3). Rule 26 affords absolute protec-

tion to "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Fed.R.Civ.P. 26(b)(3).

■ However, to come within the umbrella of the work-product doctrine, the document must have been "prepared in anticipation of litigation or for trial" and "work-product immunity is not 'extended to preparation for ex parte proceedings such as patent proceedings.'" *Bulk Lift Intern., Inc. v. Flexcon & Systems, Inc.* 122 F.R.D. 482, 491 (W.D.La.), *aff'd*, 122 F.R.D. 493 (1988) (*quoting Choat v. Rome Industries, Inc.*, 462 F.Supp. 728, 732 [N.D.Ga. 1978]); *but see Hewlett–Packard Co. v. Bausch & Lomb Inc.*, 116 F.R.D. 533 (N.D.Cal.1987) (work-product privilege extended to a draft "reply" in a reexamination proceeding before the Patent and Trademark Office).

■ While this court does not require that the work-product privilege only pertain to specific litigation at hand (*United States v. International Business Machines Corp.*, 71 F.R.D. 376, 378 (S.D.N.Y. 1976), this court finds that a "mere possibility" of future litigation is insufficient to invoke the work-product privilege. *Detection Systems*, 96 F.R.D. at 155. This court rejects the theory that litigation is a "possibility" in every patent application. Rather,

> [t]o determine when the shift from ordinary business to anticipation of litigation has occurred, the court must look at the facts of each case and determine whether the attorney reasonably concluded, at the time the documents [sic] was prepared, that a substantial probability of litigation existed.

*Weil Ceramics & Glass, Inc. v. Work*, 110 F.R.D. 500, 505 (E.D.N.Y.1986).

C. *Application of Attorney–Client Privilege and Work–Product Immunity*

1. Trial Counsel

■ Documents nos. 1–3 reflect information provided by plaintiff to trial counsel with respect to the potential patent infringement claims and are protected under both the attorney-client privilege and the work-product privilege. Document no. 4 reflects a legal opinion from trial counsel to plaintiff with respect to the instant patent infringement case and is protected under the attorney-client privilege. *See Knogo Corp. v. United States*, 213 U.S.P.Q. 936, 942 (Ct.Cl.1980) (There is no longer any question that opinions of the attorney on patentability and scope of patent claims are legal opinions). Document no. 5 reflects a summary of a meeting with plaintiffs and trial counsel with respect to prior art and the instant infringement action and is protected under both the attorney-client privilege and work-product immunity. Document no. 7 is a letter from trial counsel to plaintiff and is protected under the attorney-client and work-product privilege.

2. Patent Counsel

a. *Correspondence to Trial Counsel*

■ Document nos. 6 and 8 are not protected under the attorney-client privilege in that such documents do not reflect any communication between an attorney and client and are merely correspondence between patent counsel to trial counsel. These documents are, however, protected under work-product immunity.

b. *General Correspondence with Client*

■ Document no. 9 is protected with respect to the first line of the second paragraph and should be furnished to defendant as redacted. Document nos. 11, 12, 13 and 14 are protected from discovery under the attorney-client privilege in that each document affirmatively contains an opinion of counsel.

■ Documents nos. 10 and 20 are subject to discovery and are not protected by the attorney-client privilege. A careful reading of the documents does not reveal any legal advice. While at first glance the communications might favor a finding of privilege, the principal purpose for which the communications were made leads this court to find no privilege. Plaintiff's claim that the documents were "made pursuant to a continuing request for legal advice concerning the prosecution of the applica-

tion leading to the patent-in-suit" is not substantiated by the documents.

### i. Draft Applications and Specifications

■ Document nos. 17, 19, 21, and 24 are not protected by the attorney-client privilege. Plaintiff has not sustained its burden of demonstrating that the documents were created in response to a solicitation for legal advice as opposed to either business advice or to amend certain technical information. In *Quantum Corp. v. Western Digital Corp.*, 15 U.S.P.Q.2d 1062, 1064 (N.D.Cal.1990), the court found that drafts of patent applications were discoverable. The court based it determination on the fact that a draft patent application is a "'communication that consists largely of technical information that an agent of a client provides to the client's representative before the PTO so that that representative can pass along technical information to the PTO.'" *Id.* at 1064 (*quoting Hewlett–Packard*, 116 F.R.D. at 542). In *Quantum*, as in the instant case, the draft was prepared prior to the patent application presentation to the Patent and Trademark Office and the context of the case had not yet turned into an adversarial posture *viz*, the PTO. In *Bio–Rad*, 130 F.R.D. at 127, the court directed disclosure of the draft patent application despite its reflection of technical information received from the client. The court in *Bio–Rad* found that the questions written on the draft did not reflect questions actually posed to the client and even if they did reflect the attorney's mental impressions, plaintiff did not assert the work-product privilege. *See Paramount Packaging Corp. v. Triple R. Industries, Inc.*, 1988 WL 12780 at *1 (N.D.N.Y. Feb. 19, 1988) (court rejected attorney-client privilege with respect to drafts of amendments to claims in a patent application, drafts of a disclosure statement and drafts of petitions prepared by plaintiff's attorneys even though such documents in the broadest sense could be "for the purposes of advising [plaintiff] of its legal options"; court gave plaintiff the option to further substantiate its claim of privilege); *Howes v. Medical Components, Inc.*, 7 U.S.P.Q.2d 1511, 1988 WL 15191 (E.D.Pa.1988) (draft applications are not protected by the attorney-client privilege); *Detection Systems*, 96 F.R.D. 152 (same); *Bulk Lift*, 122 F.R.D. at 493 (same); *Sneider v. Kimberly–Clark Corp.*, 91 F.R.D. 1, 5 (N.D.Ill. 1980) (privilege rejected because much of information in draft applications could be found in public record of research of defendant); *contra Allegheny*, 1991 WL 61144 at *5 (court found draft application protected under the attorney-client privilege where it was not intended to be transmitted to the Patent and Trademark Office, contained information plaintiff considered but decided not to include in patent application and "contain[ed] a communication within the attorney-client relationship for the purpose of rendering a legal opinion in confidence").

### ii. Letters

Document no. 28, which is correspondence drafted by patent counsel, is protected from disclosure pursuant to the attorney-client privilege.

### iii. Diagrams

■ Document nos. 16, 18, 22, 23 and 25 are not protected under the attorney-client privilege, notwithstanding plaintiff's representation that patent counsel prepared the diagrams in connection with their "legal advice and opinions concerning the patentability and scope of the invention disclosed to it in confidence by its client." As noted in *Quantum*, 15 U.S.P.Q.2d at 1063, with respect to documents which include handdrawings of technical designs and handwritten notes about the drawings

> [t]he crucial issue with regard to these documents is whether they include information that is essentially legal or whether they consist solely of technical information.

*Id.* Consequently, plaintiff must provide the court with more information with respect to the nature of these documents. Plaintiff shall submit within two weeks from the date of this order a more detailed sealed affidavit in further support of the purpose of these documents.

#### iv. Miscellaneous Documents

■ Plaintiff claims that document no. 15 is a draft note prepared by "outside patent solicitation counsel based on confidential client communication and in furtherance of a continuing rendition of legal advice and services concerning the development of the subject matter of the invention of the patent-in-suit." In reality, however, document no. 15 is a draft of a declaration intended to be signed by one of the co-inventors of the instant patent. Notwithstanding that such declaration was purportedly drafted by outside patent counsel, such document does not fall within the attorney-client privilege. The draft of the declaration, which was prepared for the patent application, merely indicates background information and does not request legal advice nor does it give legal advice. The draft was created in support of plaintiff's patent application before the PTO and was not intended to be confidential. *See Sneider*, 91 F.R.D. at 6 (attorney-client privilege does not attach to a draft affidavit).

■ In addition, the draft declaration is not protected under work-product immunity. As noted above, documents drafted in support of an *ex parte* patent application are not protected under the work-product privilege. Furthermore, a draft of a declaration presumably composed by the co-inventor and later to be signed by him can not be said to be the protected as an *attorney's* work product. The court rejects any claim that the declaration was drafted by patent attorney because of his expertise and is thus his work product and reflective of his thought processes. In the patent area, if technical opinions need to be submitted and privilege needs to be asserted then the patent counsel should draft their own declarations and suffer the consequences of potentially being a witness. *See Hewlett–Packard*, 116 F.R.D. at 539.

■ Document no. 29 is discoverable and is not protected under the attorney-client privilege.[1] Plaintiff has failed to meet its burden that document no. 29 was sent to an attorney to seek "(i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding." The court has found no reference to an attorney, patent agent or even a patent search agent on any of the eight pages. Plaintiff's mere statement that these documents were supplied to "outside patent solicitation counsel" can not invoke the attorney-client privilege. A party can not hide behind the veil of the attorney-client privilege to limit discovery of confidential material that could be subject to a protective order regarding "confidential" material.

#### v. Redacted Documents

The court directs plaintiff to re-submit document no. 26 in its entirety without redactions within two weeks of the date of this order at which time this court will review document no. 26 with respect to the purported attorney-client privilege.

### 3. Patent Agent

#### a. *Domestic*

■ "[T]he weight of authority holds that the [attorney-client] privilege applies to confidential communications with patent agents acting under the authority and control of counsel." *Cuno*, 121 F.R.D. at 198 (citing *W.R. Grace & Co. v. Pullman Inc.*, 446 F.Supp. 771, 776 [W.D.Okla.1976]; *Hercules Incorporated v. Exxon Corporation*, 434 F.Supp. 136, 146 [D.Del.1977]). While the courts are split on this issue, this court adopts the conclusion in *In re Ampicillin Antitrust Litigation*, 81 F.R.D. 377, 391 (D.D.C.1978), that the attorney-client privilege should be available equally to communications of registered United States patent agents and registered United States patent attorneys, in order not to frustrate the congressional scheme of providing registration of both.

While this court is initially of the opinion that document no. 27 is protected from

---

**1.** Page one lines 2–6 reveal an employee of Osteonics' home address and as such the address may be redacted.

disclosure by the attorney-client privilege, the court directs plaintiff to re-submit document no. 27 in its entirety without redactions within two weeks of the date of this order at which time this court will review document no. 27 with respect to any purported attorney-client privilege.

b. *Foreign*

■ Communications between · attorneys and foreign patent agents may be privileged under certain circumstances.[2] In *Mendenhall v. Barber–Greene Co.*, 531 F.Supp. 951 (N.D.Ill.1982), the court delineated the circumstances when the attorney-client privilege would apply to patent agents. The court noted that if the

> communication is actually between the client and ·the foreign patent agent, and the attorney merely serves as a conduit for the information, the communication is not privileged unless under the foreign law communications between patent agents and clients are privileged. [citation omitted]. Similarly, if the communication is actually between the attorney and the foreign patent office, and the foreign patent agent merely serves as a conduit, the communication is not privileged unless direct communication between the attorney and the foreign patent office is confidential.

*Baxter Travenol Laboratories, Inc. v. Abbott Laboratories*, 1987 WL 12919 at *8 (N.D.Ill. June 19, 1987). However, the court noted that if the "communication consists not merely of information to be passed on to the foreign patent office, but is substantive, ,the result is different. If the foreign patent agent was primarily a functionary of the attorney, the communication is privileged to the same extent as any communication between an attorney and a non-lawyer working under his supervision. If the foreign patent agent is engaged in the lawyering process, the communication is privileged to the same extent as any communication between co-counsel." *Id.*

■ Furthermore, when attempting to determine whether the attorney-client privilege applies to foreign patent agents, courts have also grappled with the issue by determining whether the communication with the foreign patent "touches base" with the United States, *to wit* whether the communication relates to United States law. *See Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1169–70 (D.S.C. 1974). If the communication does not "touch base" with the United States, a court will look to the law of the foreign jurisdiction to determine whether a privilege would protect that communication in the foreign country. On the other hand, if the communication "touches base" with the United States, United States law will apply. *See Chubb Integrated Systems Ltd. v. National Bank of Washington*, 103 F.R.D. 52, 65 (D.D.C.1984).[3]

**2.** *See* Roger L. Cook, *Boundaries of Discovery in Patent Litigation*, 299 PLI/Pat 77 (October–November 1990); Donald W. Banner, *Something There is that Doesn't Love a Wall*, 258 PLI/Pat 707 (November 14, 1988); Gregory J. Battersby and Charles W. Grimes, *The Attorney–Client Privilege and Work Product Immunity in the Eyes of the Accused Infringer*, American Intellectual Property Law Association Quarterly Journal 236 (1987).

**3.** If the communication "touches base" with the United States, some cases hold that no attorney-client privilege applies to patent agents, whether domestic or foreign since the patent agent was not an attorney admitted to a United States bar, (*see Status Time Corp. v. Sharp Electronics Corp.*, 95 F.R.D. 27, 31–33 [S.D.N.Y.1982]), a second category upholds the privilege if the patent agent, domestic or foreign, was registered with the PTO (*see Ampicillin*, 81 F.R.D. at 391; *Vernitron Medical Products, Inc. v. Baxter Laboratories, Inc.* 186 U.S.P.Q. 324, 325–26 [D.N.J. 1975]; *see also Cuno*, 121 F.R.D. at 201 [attorney-client privilege applies to domestic patent agents] ), a third category of cases finds that the attorney-client privilege may apply to communications between an attorney, client and an independent patent agent, "if that patent agent is working on behalf of and under the direction of the attorney" (*Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F.Supp. 1429, 1146 [D.Del.1989] ), and a fourth category of cases upholds the privilege on the basis of a "constructive employee" theory. (*Foseco Intern, Ltd. v. Fireline, Inc.*, 546 F.Supp. 22 (N.D.Ohio 1982); *see also Hercules*, 434 F.Supp. at 146 [attorney-client privilege upheld where non-attorney patent agent, employed in a patent department of a corporation, qualified as a subordinate of the corporation's attorney having worked under the supervision of that attorney] ).

█ In the instant case, the communications did not touch base with the United States, thus this court is constrained under the relevant case law to determine whether the communication would be privileged under the relevant foreign law. *See Willemijn,* 707 F.Supp. at 1445; *J.T. Eaton & Co. Inc. v. Atlantic Paste & Glue Co.,* 1987 WL 17084 at *1 (E.D.N.Y. Aug. 31, 1987); *Chubb,* 103 F.R.D. at 65; *Detection Systems,* 96 F.R.D. at 155; *Foseco,* 546 F.Supp. at 25; *Mendenhall,* 531 F.Supp. at 953. "[W]here the foreign law is not in conflict with the public policy interests of the forum, comity is given to foreign statutes." *Eaton,* 1987 WL 17084 at *1 (*citing Detection Systems,* 96 F.R.D. at 155). Based on the case law this court concludes that under British law, the communications would be privileged.[4] *See Willemijn,* 707 F.Supp. at 1448 n. 29; *Eaton,* 1987 WL 17084 at *1; *Mendenhall,* 531 F.Supp. at 953 n. 5; *Ampicillin,* 81 F.R.D. at 391; *Duplan,* 397 F.Supp. at 1169–70. The explanation of British law is:

> Communications between a litigant and his professional legal advisor are privileged, whether at the time they are made litigation be pending or anticipated or not; similarly communications from some other person to such advisor are also privileged, but only if made when litigation is pending or anticipated. Formerly, patent agents when performing their ordinary work were not considered as professional legal advisors and communications with them were not privileged. However, the position of patent agents in this regard was altered by section 15 of the Civil Evidence Act 1986

and is now covered by section 104 of the 1977 Act.

> *Terrell on the Law of Patents* § 14.120 (William Aldous *et al.* eds., 13th ed. 1982).

In this case, while the patent agent was located in England, the purported privileged correspondence at issue pertains to a European patent application.[5] In *Eaton,* the court noted that since the patent agent

> was retained solely to assist in the prosecution of Eaton's European patent application there is no conflict with the policy interests of the United States. Thus, comity will be given to British law. [citation omitted]. The law applicable on this issue is the British Civil Evidence Act of 1968, currently referred to as the Patent Act of 1977. Among other things, this Act establishes that communications between a British patent agent and its client, or its client's representative, are protected by the attorney-client privilege.

*Id.* at *1–2.

The Patent Act of 1977 was apparently amended and recodified as the Copyright, Designs and Patents Act 1988 ("Patent Act of 1988"). The Patent Act of 1988 became effective on August 13, 1990. Section 280 of the Copyright, Designs and Patents Act 1988 provides that:

> (1) This section applies to communications as to any matter relating to the protection of any invention, design ...
>
> (2) Any such communication—
>
> > (a) between a person and his patent agent, or
> >
> > (b) for the purpose of obtaining, or in response to a request for, information which a person is seeking for the purpose of instructing his patent agent,

---

**4.** This court is of the view that United States law pertaining to the attorney-client privilege should apply to the instant case even though the communication between the domestic patent attorney and the foreign patent agent do not "touch base" with the United States. Under United States law, the instant communications would thus be privileged on the basis that the foreign patent agent was acting as an agent of the domestic patent attorney.

However, this court feels constrained by the relevant case law to look to British law to determine whether the instant communications are privileged. While under British law the instant

communications are protected from discovery, this court is uncomfortable with the Patent Act of 1988 which seems to combine the attorney-client privilege and work-product immunity into a single statutory privilege protecting all communications with a patent agent, whether confidential or not, from being subject to discovery.

**5.** *See* Exhibits 4 and 5. Letterhead of Foreign patent agents. The letterhead indicates that the patent agents are located in London, England and that they are "Chartered Patent Agents" and "European Patent Attorneys."

is privileged from disclosure in a legal proceedings in England ... in the same way as a communication between a person and his solicitor or, as the case may be, a communication for the purpose of obtaining, or in response to a request for, information which a person seeks for the purpose of instructing his solicitor.
(3) In subsection (2) "patent agent" means—
   (a) a registered patent agent or a person who is on the European list ...

Further, section 277 of the Patent Act of 1988 provides:
(1) The term "European patent attorney" or "European patent agent" may be used in the following cases without contravention of section 276 [section governing who may be a patent agent or attorney].
(2) An individual who is on the European list may—
   (a) carry on business under a name or other description which contains the words "European patent attorney" or "European patent agent", or
   (b) otherwise describe himself, or permit himself to be described, as a "European patent attorney" or "European patent agent".

    *    *    *    *    *    *

(4) A body corporate of which not less than the prescribed number or proportion of directors is on the European list may—
   (a) carry on business under a name or other description which contains the words "European patent attorney" or "European patent agent", or
   (b) otherwise describe itself, or permit itself to be described as, a company which carries on the business of a "European patent attorney" or "European patent agent".

Section 286 of the Patent Act of 1988 defines the "European list" as the "list of professional representatives maintained by the European Patent Office in pursuance of the European Patent Convention." Defendant has not asserted that the foreign patent agent, Michael R. Jones of Haseltine Lake & Co., is not on the European list. Thus, the court assumes that he is on such list.

Under the Patent Act of 1977, the attorney-client privilege applies to communication relating to "contemplated patent proceedings" which includes a "contemplated application for a patent." *Rockwell International Corp v. Serck Industries Ltd,* RPC 89 at *2 (Ch.1987) (LEXIS, Enggen library, cases file). A "patent proceeding" is a proceeding under the Patent Act of 1977 or under the European Patent Convention, the Community Patent Convention and the Patent Co-operation Treaty." Patent Act of 1977 § 104(4). "[L]etters from a patent agent to an applicant about the proceedings for a United Kingdom or European patent are privileged within the meaning of subsection (3)" of the Patent Act of 1977. *Sonic Tape PLC's Patent,* RPC 251 at *4 (1987) (LEXIS, Enggen library, cases file). *See Societe Francaise Hoechst v. Allied Colloids Limited,* FSR 66 at *3 (Ch.1992) (LEXIS, Enggen library, cases file) ("Documents which are prepared, whether at the instigation of a patent agent or by anybody for the purpose of the proceedings, that is to say for deciding whether the proceedings should be defended, whether evidence should be submitted, or advice should be sought from legal advisors, are in my view privileged").

Consequently, this court finds that under British law, a British patent agent's communication with a domestic patent attorney is protected from disclosure. This court bases this conclusion on its interpretation of the Patent Act of 1988 together with domestic caselaw construing Great Britain's predecessor patent statute and British caselaw pertaining to a British patent agent's attorney client privilege. Accordingly, document nos. 30–34 are privileged and not subject to discovery.

### Conclusion

After an *in camera* inspection, plaintiff, in accordance with the above, is directed to disclose to defendant the specific documents noted above within fifteen days from the date hereon.